# HAROLD D. GRUBB

## V.

# GEORGE T. HOCKER

Record No. 821492

Decided March 8, 1985, at Richmond

Present: All the Justices

*William L. Haugh, Jr. (John R. Prosser; Hall, Monahan, Engle, Mahan & Mitchell*, on brief), for appellant.

*Gary R. Sheehan (Samuel S. Jackson, Jr.; Gary R. Sheehan, Ltd.*, on brief), for appellee.

RUSSELL, J., delivered the opinion of the Court.

The sole question on appeal from a defendant's summary judgment in this medical malpractice case is whether the trial court abused its discretion in ruling that the plaintiff's proffered medical expert witness did not have sufficient familiarity with the applicable statewide standard of medical care to express an opinion thereon.

Harold D. Grubb, the plaintiff below, was a farmer living near Poolesville, Maryland. He developed diabetes in the mid-1960's and took insulin injections for several years, later shifting to oral medication. In the early 1970's, he consulted Dr. George T. Hocker, the defendant, a general practitioner of medicine in Leesburg, Virginia, who changed Grubb's medication. Thereafter, Grubb "felt good" and discontinued his visits to the doctor for a period of about four years.

On August 1, 1977, Grubb returned to Dr. Hocker, complaining of an inflamed foot. He reported that he had sprained his ankle, purchased an "ankle brace" at a drug store, worn it for several days, and developed soreness and bleeding. Grubb testified that Dr. Hocker examined his foot, soaked it in an iodine solution, bandaged it, and sent him home with instructions to continue to soak the foot and keep it elevated. Dr. Hocker prescribed "antibiotic pills" and saw Grubb again on August 5 and August 9. Grubb testified that Dr. Hocker did not take his temperature or samples of his blood or urine during the first three visits. On August 16 and again on August 19, Grubb returned to Dr. Hocker's office. By these dates, he testified, the sore on his foot was

"brownish or green looking," and "looked to me like some dead flesh in there," and had "started to smell a little bit." Grubb asked to be sent to the hospital, but the doctor, he said, refused and continued conservative treatment, saying, "I know what I'm doing; I'm the doctor." On August 19th, Dr. Hocker examined the foot and made an appointment to see Grubb again on August 22. Grubb testified that by August 22 his foot was "really smelling," and he went to another physician, who had him admitted to Loudoun Memorial Hospital immediately. There, he underwent four surgical procedures, culminating in the amputation of his leg.

At trial, Grubb proffered the evidence of a single expert witness, Dr. David Horwitz, for the purpose of testifying to the standard of care applicable to a general practitioner in Virginia and to give an opinion as to Dr. Hocker's negligent failure to conform to the standard. Dr. Horwitz graduated from Harvard University and the University of Chicago Medical School. He served an internship at the University of Chicago Hospital and did postgraduate work there in diabetes and endocrinology. He holds an undergraduate degree, an M.D., and a Ph.D.

He was at the time of trial an associate professor of medicine at the University of Illinois, licensed to practice medicine in Illinois and Florida. He is board certified in Internal Medicine and in the sub-specialty of endocrinology and metabolism. He has taught and written extensively in the area of diabetes and related disorders.

From 1969 to 1971, Dr. Horwitz was employed as an emergency room physician at Fairfax Hospital in Fairfax County. During that period, he became licensed to practice medicine in Virginia. He subsequently served briefly as a visiting professor at Portsmouth Naval Hospital in Virginia. He returned to Virginia about two years before trial to lecture health care professionals at Reston concerning the clinical treatment of diabetes.

Dr. Horwitz testified that he was a general practitioner while his license to practice medicine in Virginia was in effect, but that his Virginia license lapsed after 1971, when he left the state. He stated, however, that he maintained "currency" in the fields of internal medicine, endocrinology and metabolism, as related to the treatment of diabetes, and that he maintained familiarity with the standard of care for a general practitioner of medicine in Virginia. He testified:

I have numerous contacts with physicians practicing in the State of Virginia. I attend their lectures, several people from the Diabetes Center at the University of Virginia. I have heard a lecture recently, and I know that their standard of practice is unchanged essentially from when I was practicing in the State.

Dr. Horwitz admitted that he had always practiced medicine in a hospital or academic setting, and that he had never been in private practice.

At the close of Dr. Horwitz' testimony on his qualifications, the court sustained the defendant's objection to Dr. Horwitz' competence to express an opinion as to the applicable standard of care, but ruled that he might testify to matters relating specifically to diabetes. The plaintiff was granted a brief continuance to seek the service of another expert witness as to the standard of care. Upon the plaintiff's failure to present such an expert, the court granted the defendant's motion to strike the evidence and entered summary judgment for the defendant.

During the time of Dr. Hocker's allegedly negligent treatment, the provisions of former Code § 8.01-581.12:1 were in effect:

> In any action against a physician, dentist, nurse, hospital or other health care provider to recover damages alleged to have been caused by medical malpractice where the acts or omissions so complained of are alleged to have occurred in this Commonwealth, the standard of care by which the acts or omissions are to be judged shall be that degree of skill and diligence practiced by a reasonably prudent practitioner in the field of practice or specialty in this Commonwealth; provided, however, that the standard of care in the locality or in similar localities in which the alleged act or omission occurred may be applied if, after considering the health care services and health care facilities available in such locality or other similar localities it is determined that the local standard of care is more appropriate than a statewide standard.

Code § 8.01-581.12:1 (1977 Repl. Vol.) (repealed and substantially reenacted as § 8.01-581.20, Acts 1979, c. 325). After thus substituting the "statewide standard" for the "locality standard" which prevailed at common law, the General Assembly, in 1980,

further added: "An expert witness who is familiar with the state-wide standard of care shall not have his testimony excluded on the ground that he does not practice in this Commonwealth." (Acts 1980, c. 164, amending Code § 8.01-581.20). Thus, the dispositive question is simply whether Dr. Horwitz demonstrated, through the evidence given as to his qualifications, familiarity with the degree of skill and diligence practiced by a reasonably prudent general practitioner of medicine in Virginia.

In *Noll* v. *Rahal*, 219 Va. 795, 250 S.E.2d 741 (1979), although applying the former "locality standard," we nevertheless summarized the governing principles.

> Whether a witness is qualified to express an opinion as an expert is a question largely within the sound discretion of the trial court . . . . A decision to exclude a proffered expert opinion will be reversed on appeal only when it appears clearly that the witness was qualified . . . . And the expressed belief of a witness that he is an expert does not *ipso facto* require his qualification . . . . The facts must show that he possesses sufficient knowledge, skill or experience to make him competent to testify as an expert on the subject matter of the inquiry.

*Id.* at 800, 250 S.E.2d at 744 (citations omitted). We also held, however, that the knowledge necessary to qualify a witness to testify as an expert might be derived from study alone, or experience, or both. *Id.* at 801, 250 S.E.2d at 745.

As we noted in *Noll*, the legislation substituting the "statewide standard" for the "locality standard," although enacted, had not become effective when that cause of action arose. In *Noll*, we were required to decide whether the trial court had abused its discretion in excluding a pediatrician, who had practiced for five years in Fairfax, from testifying to the standard of care exercised by prudent pediatricians in the metropolitan area of Richmond. Although the witness demonstrated a high degree of qualifications in pediatric medicine, he had never lived, studied, worked, or practiced in the Richmond area. His statement that he was familiar with the applicable local standard was based upon his membership in the Medical Society of Virginia, reading its monthly publication, attendance at medical meetings throughout the state, teaching residents from the Medical College of Virginia, and per-

sonal acquaintance with one Richmond pediatrician. Noting the witness' lack of personal connection with, or study of, the practice of pediatric medicine in the locality under consideration, we held that his experience was too meager to warrant a holding, as a matter of law, that the trial court had committed a clear abuse of discretion in excluding his testimony.

■ A comparison of *Noll* with the present case is instructive. There, the applicable standard was that of practitioners in the Richmond area, where the proffered witness had never lived, worked, taught, or practiced. Here, the applicable standard is that of the entire Commonwealth, where the proffered witness *has* lived, worked, taught, and practiced. Moreover, Dr. Horwitz went so far as to complete the requirements for licensure as a general practitioner of medicine in Virginia, the field with which his familiarity must be demonstrated if he is to testify as an expert. We conclude that this is a sufficient factual showing to establish, *prima facie*, that he possessed the necessary knowledge, skill, and experience to testify as an expert to the appropriate standard of care in his field when he was admitted to practice in it. We would be reluctant to hold that one who has demonstrated the requisite knowledge and skill to qualify for admission to practice a regulated profession in Virginia is nevertheless unqualified to give an opinion as to the degree of skill and diligence required of reasonably prudent Virginia practitioners in the field to which he has been admitted. He may, through inattention to changing conditions or from other cause, lose the familiarity which he possessed at the time of his admission to practice, and an opposing party is entitled to show that his qualifications have attenuated, but no such showing was made here.

■ Because of the 1980 amendment to Code § 8.01-581.20, quoted above, it is clear that Dr. Horwitz' lack of current practice in Virginia forms no basis, in itself, for the exclusion of his testimony. Neither do we conclude that the lapse of his Virginia license and his absence from the state serve to negate the familiarity with the applicable standard which he demonstrated by qualifying for admission to practice in Virginia. Indeed, he testified to continuing contacts, visits, and study which would only serve to maintain the familiarity with professional standards which he had previously acquired.

Accordingly, we hold that the trial court abused its discretion in refusing to qualify Dr. Horwitz as an expert witness, in striking

the plaintiff's evidence, and in entering summary judgment. The summary judgment will be reversed and the case remanded for further proceedings consistent with this opinion.

*Reversed and remanded.*