MARGARET TODD, ADMINISTRATRIX OF THE
ESTATE OF COLLEEN MILLS, DECEASED

V.

EDWIN L. WILLIAMS, II, M.D., LTD., ET AL.

Record No. 901665

September 20, 1991

Present: Carrico, C.J., Compton, Stephenson, Russell,* Whiting, Lacy, and Hassell, JJ.

---

* Justice Russell prepared and the Court adopted the opinion in this case prior to the effective date of his retirement on July 1, 1991.

S. D. Roberts Moore (Melissa W. Scoggins; Gentry, Locke, Rakes & Moore, on briefs), for appellant.

John T. Jessee (Frank K. Friedman; E. Dale Burrus; Woods, Rogers & Hazlegrove, on brief), for appellees.

JUSTICE RUSSELL delivered the opinion of the Court.

This appeal arises from a judgment in favor of the defendants in a medical malpractice case. It presents three questions concerning the application of the hearsay rule to expert testimony.

Colleen Mills was 13 years old in 1984 when she was diagnosed as suffering from Hodgkin's disease. She was admitted to Roanoke Memorial Hospital on April 23 of that year to undergo a staging laparotomy which included a splenectomy. Her surgeon, Dr. Edwin L. Williams, II, was of opinion that she had a 95% chance of complete recovery from Hodgkin's disease after the surgery. Colleen's postoperative course seemed uneventful, but on April 30, the day she was scheduled for discharge from the hospital, Colleen collapsed and suddenly died. Although her mother would not authorize an autopsy at the time, the cause of Colleen's death was thought to be a massive pulmonary embolus.

Margaret Todd, Colleen's mother, brought this medical malpractice action against Dr. Williams and his professional corporation on August 4, 1989. The case was tried to a jury on June 20 and 21, 1990, ending in a defendants' verdict. The court denied Mrs. Todd's post-trial motions and entered final judgment on the verdict on September 13, 1990. We granted Mrs. Todd an appeal.

## I. OPINIONS OF OTHER PHYSICIANS

The plaintiff's theory was that Dr. Williams had departed from the applicable standard of care by failing to obtain a platelet count from Colleen's blood after the surgery. The plaintiff's expert witness, Dr. Alfred S. Gervin, testified that a platelet count, if ordered, almost certainly would have revealed such a high level of platelets in Colleen's blood as to require Dr. Williams to administer anticoagulants immediately, and that such anticoagulants would have prevented the formation of the fatal embolus.

Dr. Jack R. Hutcheson, Jr., an expert witness for the defendants, testified that in cases such as Colleen's, numerical platelet counts are not particularly revealing. Over the plaintiff's objection, Dr. Hutcheson testified,

I have also posed that question to some other national authorities in this particular field . . . . I spoke with Dr. Wendell Ross at Duke and I spoke with Dr. William, Bell at [Johns] Hopkins about this. Their feeling is much like mine, that normal platelets are different from the platelets in the myeloproliferative disorders . . . ."

The court overruled the plaintiff's objection to this testimony, remarking that the witness was "offered as an expert." Neither of

the two physicians to whom Dr. Hutcheson referred was present at trial.

■ Mrs. Todd argues on appeal that Dr. Hutcheson's recital of the confirming opinions of two absent physicians was inadmissible hearsay, citing our decision in *McMunn* v. *Tatum*, 237 Va. 558, 379 S.E.2d 908 (1989). We agree. In *McMunn*, we held that although Code § 8.01-401.1 authorizes the admission into evidence of an expert's opinion that may be based in whole or in part on inadmissible hearsay, the statute does *not* authorize the admission of any hearsay opinion on which the expert's opinion was based. We observed:

> The admission of hearsay expert opinion without the testing safeguard of cross-examination is fraught with overwhelming unfairness to the opposing party. No litigant in our judicial system is required to contend with the opinions of absent "experts" whose qualifications have not been established to the satisfaction of the court, whose demeanor cannot be observed by the trier of fact, and whose pronouncements are immune from cross-examination.

*Id*. at 556, 379 S.E.2d at 912.

Dr. Williams argues that admission of the hearsay was, at most, harmless error because (1) the hearsay merely confirmed the opinion of Dr. Hutcheson, which was subject to the test of cross-examination, and, therefore, the hearsay added nothing new to the case, and (2) the hearsay was admitted on an issue upon which there was little disagreement among the plaintiff's and the defendants' experts, and therefore could not prejudice the plaintiff.

■ We cannot accept Dr. Williams' characterization of the hearsay as harmless. Our review of the record discloses a substantial disagreement between the plaintiff's and the defendants' experts on the question whether a postoperative platelet count would have shown the need for anticoagulant therapy to forestall the clotting of the blood. More to the point, however, was the nature of the trial as a classic battle of experts. The controlling issue at trial was that of the credibility of expert witnesses whose opinions were conflicting. The jury's task was to determine which opinion was more worthy of credit and to give credit accordingly. The court's ruling permitted Dr. Hutcheson to bolster his opinion with the news that two absent "national authorities" from prestigious

medical centers agreed with him. That ruling suffered from the same infirmities as those pointed out in *McMunn*.

## II. TRENDS IN MEDICAL LITERATURE

An additional expert witness for the defense was Dr. Rome H. Walker. On his direct examination, defense counsel referred to two articles which had been discussed by Drs. Gervin and Hutcheson, the experts who had testified earlier. Dr. Walker's direct examination continued as follows:

Q Were these the only two articles that you found in your search?

A No, we found a number of other articles which I did not necessarily reproduce. They were on the literature search provided by the librarian.

Out of the articles that were produced for the last ten years, there were certainly, all of the articles showed a trend toward the fact that platelet counts did not necessarily —

[PLAINTIFF'S COUNSEL]: I respectfully object to his referring to other articles.

THE COURT: This is the basis of his opinion, overruled. The opinion relates to 1984, however.

[DEFENSE COUNSEL]:

Q You can continue.

A The trend of all the articles was that the platelet count does not necessarily predict which patients will develop thrombotic problems down the road in patients who do not have myeloproliferative disorders. The literature strongly supported that.

▪ Mrs. Todd argues on appeal that the court's ruling was erroneous, citing *Hopkins* v. *Gromovsky*, 198 Va. 389, 94 S.E.2d 190 (1956). We agree. In *Hopkins*, we held that it was proper to cross-examine an expert witness to test his knowledge and accuracy by reading excerpts from scientific articles, which the expert

recognizes as standard and authoritative in his field, and to ask him whether he agrees with what has been read. We further held, however, that it was reversible error to introduce the content of such articles into evidence so as to present to the jury the opinions of the authors. *Id.* at 394-95, 94 S.E.2d at 194.

■ The reasons for the exclusion of medical books and articles are the same as those pertaining to hearsay in any other form: they lack the sanction of an oath, the court has no opportunity to pass upon the author's qualifications, the jury is denied the opportunity to observe the demeanor of the author, and above all, the opinions expressed cannot be tested in the crucible of cross-examination. We continue to adhere to the views expressed in *Hopkins*.

■ Dr. Williams argues on brief that it is "ludicrous to suggest" that a medical expert should not (1) conduct a survey of the medical literature in the field under consideration, (2) inform the jury that he has done so, and (3) further observe that his reading of the literature supports his own view. We agree with the first two propositions, but not with the third. In laying the foundation for an expert opinion, the direct examiner may elicit the sources consulted by the expert in formulating his opinion. In that connection, it is no more improper to disclose that the witness has reviewed the applicable medical literature than it is to disclose that the witness has reviewed hospital records and scientific test results.

■ When, however, the witness goes beyond disclosing the identity of his sources and tells the jury the opinions actually expressed in those sources, the opposing party suffers the same "overwhelming unfairness" as that to which we referred in *Mc-Munn, supra*. It is immaterial if, as here, the content of the absent author's opinion is adduced only inferentially by asking the witness if his opinion and that of the author are in agreement. The opposing party is, nevertheless, denied the opportunity to cross-examine the author of an opinion being used to bolster the credibility of the witness. Therefore, we conclude that the trial court's ruling was inconsistent with our holding in *Hopkins*.

## III. REHABILITATION OF EXPERT WITNESS

Although the two foregoing holdings necessitate reversal, we will briefly discuss Mrs. Todd's final assignment of error because the issue it presents may recur on retrial. Plaintiff's counsel, in cross-examining Dr. Hutcheson, referred him to two articles in the

pertinent medical literature and, pursuant to the rule in *Hopkins*, read excerpts from the articles to the witness and asked him whether he agreed with the authors' statements. On redirect examination, defense counsel asked the witness to read to the jury additional paragraphs from the same articles. The court overruled the plaintiff's objection and the witness read the additional matter to the jury. Mrs. Todd assigns error to that ruling, contending that the additional paragraphs were hearsay.

In each case, the additional matter read by the witness on redirect examination was germane to the excerpts read by plaintiff's counsel on cross-examination. With respect to each article, the witness was asked, on redirect examination, to read a summary of the author's conclusions. The effect of this redirect examination was to place in context the limited glimpses of the authors' opinions which the jury had been able to glean from the excerpts read on cross-examination.

The cross-examination had created the impression that the opinion of the witness was in conflict with scientific articles which the witness recognized as authoritative. The redirect examination corrected that impression by showing that, when the full context of the articles was considered, no conflict existed.

Trial courts must necessarily be vested with wide discretion in determining whether redirect examination is properly confined to the rehabilitation of a witness with respect to matters upon which his testimony has been attacked on cross-examination, or whether the redirect examination has improperly crossed into an area of matters unrelated to the cross-examination. The record shows no abuse of that discretion in the present case. "Cross-examination on a part of a transaction enables the opposing party to elicit evidence on redirect examination of the whole transaction at least to the extent that it relates to the same subject." *Linwood Earl Briley* v. *Commonwealth*, 221 Va. 532, 540, 273 S.E.2d 48, 53 (1980), *cert. denied*, 451 U.S. 1031 (1981) (quoting *United States* v. *Barrentine*, 591 F.2d 1069, 1081 (5th Cir.), *cert. denied*, 444 U.S. 990 (1979)). We hold that the trial court properly permitted the admission of the additional materials for the purpose of rehabilitating the witness.

Because of the admission of hearsay evidence, discussed above, we will reverse the judgment appealed from and remand the case for a new trial on all issues.

*Reversed and remanded.*