BETTY JEAN GRIFFETT, EXECUTRIX OF
THE ESTATE OF HENRY GRIFFETT, DECEASED

v.

MICHAEL J. RYAN, M.D., ET AL.

Record No. 930613

April 15, 1994

Present: All the Justices

466

*Judith M. Cofield (Thomas B. Shuttleworth; Shuttleworth, Ruloff, Giordano & Kahle,* on briefs), for appellant.
*Michael E. Ornoff (Russel, Cantor, Arkema & Edmonds,* on brief), for appellees.

JUSTICE HASSELL delivered the opinion of the Court.

In this appeal of a judgment in a medical malpractice action, we consider issues relating to proximate causation and admission of expert testimony.

## I.

Betty Jean Griffett, executrix of the estate of Henry Griffett, filed this wrongful death action against Michael J. Ryan, M.D., Digestive & Liver Disease Specialists, Ltd., David M. Bridges, M.D., and Medical Center Radiologists, Inc. She alleged that the defendants failed to diagnose her husband's cancer and that such failure was a proximate cause of his death. The defendants denied any acts of negligence.

The case was tried before a jury. At the conclusion of the plaintiff's evidence, the trial court granted motions to strike the plaintiff's evidence made by Dr. Bridges and Medical Center Radiologists and entered judgments in their favor. The plaintiff does not assign error to these judgments. The case proceeded against Dr. Ryan and his corporation, Digestive & Liver Disease Specialists, Ltd. The jury returned a verdict in favor of the plaintiff in the amount of $500,000. The trial court granted the defendants' motion to set aside the verdict and entered a final judgment. We awarded the plaintiff an appeal.

Even though the trial court set aside the jury's verdict, we accord the recipient of the verdict the benefit of all substantial conflicts in the evidence and all reasonable inferences that may be drawn therefrom. Therefore, we will state the facts in the light most favorable to the plaintiff, and if there is any credible evidence in the record that supports the verdict, we must reinstate that verdict and enter judgment thereon. *Loving* v. *Hayden*, 245 Va. 441, 442, 429 S.E.2d 8, 9 (1993).

Henry Griffett was taken to the emergency room of Sentara Leigh Hospital in Norfolk on February 5, 1988. He complained of abdominal pain. Two emergency room physicians evaluated him and ordered certain x-rays, including a chest x-ray.

Dr. Bridges, a radiologist, reviewed the chest x-ray and noted an "abnormal density." Dr. Bridges' final radiological report confirmed that the chest x-ray revealed the existence of a suspicious, abnormal density in the upper lobe of Mr. Griffett's right lung.

Mr. Griffett was referred to Dr. Ryan, a gastroenterologist who examined Mr. Griffett and admitted him to Sentara Leigh Hospital where he was observed for 24 hours and discharged. Dr. Ryan did not review the February 5, 1988 radiological report or Mr. Griffett's chest x-ray film.

Mrs. Griffett called Dr. Ryan's office on March 1, 1988 to inform him that her husband continued to experience intermittent abdominal pain. Dr. Ryan's nurse informed Mrs. Griffett that Mr. Griffett should go to the emergency room if the pain became prolonged.

Dr. John W. Baker, Jr., examined Mr. Griffett in November 1989. Mr. Griffett had complained of pain in his right shoulder. Dr. Baker diagnosed Mr. Griffett's condition as cancer in the upper lobe of his right lung. The "abnormal density," shown on the chest x-ray in February 1988, was a cancerous tumor that had subsequently quadrupled in size. The tumor was surgically removed in February 1990 and Mr. Griffett died in September 1990.

## II.

### A.

During the trial, Dr. Alfred Muller was qualified to testify as the plaintiff's expert witness on the issue of proximate causation. Dr. Muller testified that, within a reasonable degree of medical certainty, Mr. Griffett would have had a greater likelihood for cure if Dr. Ryan had made a diagnosis of cancer in February 1988. The defendants objected to this testimony because the plaintiff purportedly failed to identify Dr. Muller as an expert witness on the subject of proximate causation in the plaintiff's answers to interrogatories. The defendants also contended that Dr. Muller was not qualified to render opinions on proximate causation. Furthermore, the defendants argued that the plaintiff should not have been permitted to use Dr. Muller as an expert witness at trial on proximate causation because, during a pre-trial hearing, the plaintiff had informed the court that another physician would be the plaintiff's expert witness who would testify on the issue of proximate causation.

The trial court initially overruled the defendants' objections and permitted Dr. Muller to testify. However, after the jury's verdict was returned, the trial court ruled that it had erred by permitting Dr. Muller to testify. On appeal, the parties make essentially the same arguments advanced in the trial court.

Our review of the record discloses that the plaintiff identified Dr. Muller as an expert witness who would testify on the issue of proximate causation. For example, the plaintiff stated, in her supplemental answers to interrogatories, dated March 6, 1992 that Dr. Muller would render the following expert opinion at trial:

It is quite clear that early detection of lung cancer results in a higher incident of survival. By the long delay in this case the patient's ultimate survival was drastically reduced, and is, therefore, in my opinion, inappropriate follow-up care.

Furthermore, the defendants took the discovery deposition of Dr. Muller. Our review of that deposition reveals that the defendants examined Dr. Muller on the subject of the causal relationship between Dr. Ryan's breach of the standard of care and Mr. Griffett's death.

It is true, as the defendants assert, that the plaintiff's counsel informed the trial court during a hearing on the defendants' motion for summary judgment that Dr. Baker would testify as the plaintiff's only expert on proximate causation. However, the statement, when read in context with the entire record, cannot be deemed an abandonment or waiver of the plaintiff's right to use Dr. Muller as an expert on proximate causation at trial. We also observe that the defendants were neither prejudiced nor surprised by Dr. Muller's testimony because they had taken his pre-trial discovery deposition. Therefore, we hold that the plaintiff adequately disclosed Dr. Muller as an expert who would render opinions on proximate causation at trial.

The defendants contend that Dr. Muller was not qualified to testify regarding Mr. Griffett's chance of survival had Dr. Ryan diagnosed the lung cancer in February 1988. We disagree.

In *Grubb* v. *Hocker,* 229 Va. 172, 326 S.E.2d 698 (1985), we stated:

> Whether a witness is qualified to express an opinion as an expert is a question largely within the sound discretion of the trial court. . . . A decision to exclude a proffered expert opinion will be reversed on appeal only when it appears clearly that the witness was qualified. . . . And the expressed belief of a witness that he is an expert does not *ipso facto* require his qualification. . . . The facts must show that he possesses sufficient knowledge, skill or experience to make him competent to testify as an expert on the subject matter of the inquiry.

*Id.* at 176, 326 S.E.2d at 700 (quoting *Noll* v. *Rahal,* 219 Va. 795, 800, 250 S.E.2d 741, 744 (1979)). Additionally, we have held that "the knowledge necessary to qualify a witness to testify as an expert might be derived from study alone, or experience, or both." *Grubb,* 229 Va. at 176, 326 S.E.2d at 700-01.

Dr. Muller received his M.D. degree from Columbia University College of Physicians and Surgeons. He is licensed to practice medicine in the District of Columbia, Maryland, and Virginia. He is board certified in internal medicine. He has been practicing medicine since approximately 1970, and he teaches medical students at Georgetown University. He has diagnosed patients with cancer. Accordingly, we hold that the trial court did not abuse its discretion in holding that Dr. Muller was competent to render expert testimony on the causal relationship between the defendants' negligence and Mr. Griffett's death.

The defendants argue that the plaintiff failed to prove that Dr. Ryan's negligence was a proximate cause of Mr. Griffett's death because "[a]t the very best, plaintiff proved only the loss of a *mere possibility* of survival." The plaintiff argues, however, that she presented evidence from which the jury could infer that Dr. Ryan's failure to make a timely diagnosis of Mr. Griffett's cancer was a proximate cause of his death. We agree with the plaintiff.

In *Whitfield* v. *Whittaker Memorial Hosp.,* 210 Va. 176, 184, 169 S.E.2d 563, 568-69 (1969), we stated:

> When a physician's or surgeon's negligent action or inaction has effectively terminated a person's chance of survival, he will not be permitted to raise conjectures as to possible chances for survival that he has put beyond realization. If there was any substantial possibility of survival and the defendant has destroyed it, he is answerable. Rarely is it possible to demonstrate to an absolute certainty what would have happened if certain actions had been taken. The law does not in all circumstances require a plaintiff to show to a certainty that a patient would have lived had he been operated on promptly.

(Citations omitted).

In *Brown* v. *Koulizakis,* 229 Va. 524, 532, 331 S.E.2d 440, 446 (1985), we held: "[t]hus, in a death case, if a defendant physician, by action or inaction, has destroyed any substantial possibility of the patient's survival, such conduct becomes a proximate cause of the patient's death." We applied these principles in *Hadeed* v. *Medic-24, Ltd.,* 237 Va. 277, 286-87, 377 S.E.2d 589, 593-94 (1989), and, more recently, in *Blondel* v. *Hays,* 241 Va. 467, 473, 403 S.E.2d 340, 343-44 (1991). In *Blondel,* we stated that "if a plaintiff's evidence has shown that the defendant's negligence has destroyed any substantial possibility of the patient's survival, then there is sufficient evidence of

proximate cause to go to the jury." *Blondel,* 241 Va. at 474, 403 S.E.2d at 344.

■ Here, the plaintiff presented evidence that Dr. Ryan's negligence destroyed "any substantial possibility" of Mr. Griffett's survival. For example, Dr. Muller testified that within a reasonable degree of medical certainty there "would have been a high likelihood that [an] operation in 1988 would have resulted in the patient being saved." Accordingly, we hold that there is sufficient evidence of proximate causation to support the jury's verdict.

### B.

The trial court ruled, over the defendants' objections, that Dr. Muller was qualified to render an opinion as an expert witness regarding whether Dr. Ryan complied with the standard of care imposed upon him. Dr. Muller testified that the applicable standard of care in 1988 required that Dr. Ryan read Mr. Griffett's entire medical chart. Dr. Muller testified that Dr. Ryan failed to comply with that standard of care because Dr. Ryan did not review the information in Mr. Griffett's chart and, had Dr. Ryan done so, he would have learned that the chest x-ray indicated the presence of a cancerous tumor on Mr. Griffett's lung.

The defendants argued both during the trial and in their post-trial motion that Dr. Muller was not qualified to render opinions on the applicable standard of care because Dr. Muller is an internist and Dr. Ryan is a gastroenterologist. The trial court ruled that it had erred by permitting Dr. Muller to testify as an expert witness on the standard of care. The plaintiff argues that Dr. Muller was qualified to render expert testimony on the standard of care and any deviations therefrom.

Code § 8.01-581.20 states in relevant part:

Any physician who is licensed to practice in Virginia shall be presumed to know the statewide standard of care in the specialty or field of medicine in which he is qualified and certified. This presumption shall also apply to any physician who is licensed in some other state of the United States and meets the educational and examination requirements for licensure in Virginia. An expert witness who is familiar with the statewide standard of care shall not have his testimony excluded on the ground that he does not practice in this Commonwealth. A witness shall be qualified to testify as an expert on the standard of care if he demonstrates

expert knowledge of the standards of the defendant's specialty and of what conduct conforms or fails to conform to those standards and if he has had active clinical practice in either the defendant's specialty or a related field of medicine within one year of the date of the alleged act or omission forming the basis of the action.

■ Under the facts and circumstances of this case, we hold that Dr. Muller was qualified to render an expert opinion regarding the standard of care imposed upon Dr. Ryan. Dr. Muller is licensed to practice in Virginia and, applying the plain language contained in Code § 8.01-581.20, he is presumed to know the statewide standard of care in the field of medicine in which he is qualified and certified. Here, the field of medicine in which Dr. Muller is qualified and certified is internal medicine. The record reveals that an internist is a physician specializing in the diagnosis and medical treatment of diseases affecting adults. A gastroenterologist is a physician who is also an internist, but who has a subspecialization in the diagnosis and treatment of diseases of the gastrointestinal tract, liver, and pancreas. Dr. Muller and Dr. Ryan are board certified in internal medicine, and Dr. Ryan has a subspecialty and is board certified in gastroenterology.

The evidence of record indicates that there is "a great deal of overlap and . . . diagnostic skills that are common to both [internists and gastroenterologists]." Dr. Muller, describing the commonalities and distinctions between gastroenterology and internal medicine testified, "[o]bviously the internist would not be able to perform [certain] procedures because we have not been trained nor qualified to do those procedures, but we [internists] still might know when they are needed and we still might refer these cases to the gastroenterologist just to do a procedure and then to come back with the same intestinal or liver problem that we would follow." He further stated that "I don't think there is a clear separation" between internal medicine and gastroenterology.

Our review of the record reveals that Dr. Muller has demonstrated knowledge of the standards regarding what, if anything, an internist, who is also a gastroenterologist, should do regarding medical information that is contained in a patient's hospital record. We do not believe that the duty to review an x-ray contained in a patient's medical record should vary between an internist and a gastroenterologist.

■ We do recognize, however, that there are certain standards of care imposed upon a gastroenterologist on which an internist simply would not be qualified to render an opinion. However, that is not the

case here. Once the plaintiff established that Dr. Muller was licensed to practice in Virginia and, therefore, entitled to the statutory presumption of possessing knowledge of the statewide standard of care in the field of medicine in which he is qualified, the burden shifted to the defendants to show that the standard of care imposed upon a gastroenterologist did not require that gastroenterologist to review chest x-rays in the patient's hospital record. We find nothing in the record that suggests the defendants rebutted this presumption.

## III.

### A.

■ The defendants made two assignments of cross-error. On brief, the defendants contend that the trial court erred in permitting the plaintiff to cross-examine Dr. R. Cecil Chapman by using a medical article that Dr. Chapman did not recognize as standard and authoritative in his field and which contained the hearsay opinions of other authors and other medical publications. Dr. Chapman, the defendants' expert witness, testified during cross-examination that he recognized Dr. Frederick Stitik, a radiologist in the Tidewater area, as authoritative on "staging of lung cancer." Subsequently, and over the defendants' objection, the trial court permitted the plaintiff to cross-examine Dr. Chapman by using an article authored by Dr. Stitik even though Dr. Chapman did not testify that the specific article was standard and authoritative in the field. The plaintiff argues that the trial court did not err because Dr. Chapman recognized Dr. Stitik as authoritative. We disagree with the plaintiff.

In *Hopkins* v. *Gromovsky,* 198 Va. 389, 395, 94 S.E.2d 190, 194 (1956), we held that a litigant may cross-examine an expert witness by reading excerpts from scientific articles that the expert recognizes as standard and authoritative in the field. The litigant may also ask the expert whether the expert agrees with what has been read. We recently restated this principle in *Todd* v. *Williams,* 242 Va. 178, 182-83, 409 S.E.2d 450, 452-53 (1991).

Here, the trial court erred by permitting the plaintiff to cross-examine Dr. Chapman with the article because Dr. Chapman did not recognize the article as standard and authoritative in the field. Contrary to the plaintiff's assertions, it is not sufficient that Dr. Chapman recognized the author of the article as authoritative. Rather, the article that is used during the cross-examination, not the author, must be recognized by the witness as standard and authoritative in the field.

■ In most instances, an improper cross-examination of an expert with an article that the expert does not recognize as standard and authoritative in a particular field constitutes reversible error. *See Todd,* 242 Va. at 183, 409 S.E.2d at 452-53; *Hopkins,* 198 Va. at 395, 94 S.E.2d at 194. Here, however, the error was harmless.

■ The article the plaintiff used to cross-examine Dr. Chapman was written by Dr. Stitik and is entitled "Screening in the Early Detection of Lung Cancer as a Continuation of the National Institute of Health and National Cancer Institute," and was published in Radiological Clinics of North America, Vol. 26, No. 3, December 1978. This article was based upon studies conducted jointly by several medical institutions. The plaintiff used this article to ascertain if Dr. Chapman agreed that persons who experienced cancerous surgically-staged lesions of two centimeters or less could have a survival rate between 53% and 80%. Later, during cross-examination, independent of Dr. Stitik's article, Dr. Chapman testified that individuals with surgically-staged cancers have a survival rate between 53% and 80%. Therefore, we hold that the plaintiff's improper cross-examination constitutes harmless error because Dr. Chapman admitted the same findings described in the publication that was used to cross-examine him.

### B.

The defendants also assign as cross-error that the trial court erred by permitting Dr. Michael Geduldig to qualify as an expert witness and render an opinion on the standard of care imposed upon a gastroenterologist in Virginia. The defendants argue that Dr. Geduldig, a gastroenterologist who practices in Pennsylvania, failed to meet the prerequisites specified in Code § 8.01-581.20 and failed to familiarize himself with the Virginia standard of care. We disagree.

■ Code § 8.01-581.20, which is recited above, creates a presumption that a physician who is licensed in another state and meets the educational and examination requirements for licensure in Virginia is presumed to know the statewide standard of care in the specialty or field of medicine in which he is qualified or certified. There is sufficient evidence in the record to support the trial court's findings that Dr. Geduldig met the educational and examination requirements for licensure in Virginia prescribed in Code § 54.1-2930. This statute states in relevant part:

The Board [of Medicine] may admit to examination for licensure to practice medicine . . . any candidate who has submitted satisfactory evidence verified by affidavits that he:

1. Is eighteen years of age or more;

2. Is of good moral character;

3. Has successfully completed all or such part as may be prescribed by the Board, of an educational course of study of that branch of the healing arts in which he desires a license to practice, which course of study and the educational institution providing that course of study are acceptable to the Board; and

4. Has completed one year of satisfactory postgraduate training in a hospital approved by an accrediting agency recognized by the Board for internships or residency training.

The evidence of record reveals that Dr. Geduldig was over the age of eighteen, of good moral character, and a graduate of New York University Bellevue Medical School. He performed his internship at Baltimore City Hospitals in Baltimore, Maryland. He completed a fellowship at Johns Hopkins University and was an instructor in medicine at Johns Hopkins University. He was an associate professor at the University of Pennsylvania and an associate professor and chairman of the division of gastroenterology at Hahnemann Medical College. He is currently a clinical professor of medicine at the Hershey Medical Center. He also serves as chief of the division of gastroenterology at the Harrisburg Hospital. He is a fellow of the American College of Physicians and a member of the American Gastroenterological Association. He is a member of the American Association for the Study of Liver Disease and of the American Society for Gastrointestinal Endoscopy. He is board certified in internal medicine and gastroenterology. We hold that the evidence was sufficient to support the trial court's finding that Dr. Geduldig met the educational and examination requirements for licensure in Virginia.

Our review of the record also indicates that Dr. Geduldig did show the requisite familiarity with the standard of care in Virginia. He testified that he attends national seminars with Virginia physicians and exchanges ideas regarding patient care, proper diagnostic procedures, and proper therapeutic modalities used in patient care. Dr. Geduldig also consulted with a Virginia physician regarding the standard of care

in Virginia and reviewed certain medical records. We hold that the trial court did not err by permitting Dr. Geduldig to testify.

## IV.

We will reverse the judgment of the trial court, and we will enter final judgment here reinstating the jury's verdict.

*Reversed and final judgment.*

JUSTICE COMPTON, dissenting in part.

In an assignment of cross-error, the defendants contend that the trial court erred in allowing Dr. Chapman to be cross-examined with a medical article that he did not recognize as authoritative and that contained hearsay opinions of other authors and other medical publications. The majority agrees that the trial court erred in this respect but holds that the error was harmless. In my opinion the error was harmful.

To support its harmless-error ruling, the majority asserts that the witness, "independent" of the medical article, "admitted the same findings described in the publication that was used to cross-examine him."

Excerpts from medical books or treatises, even though recognized as standard authorities on the subject to which they relate, are not admissible as evidence to prove the truth of the statements therein contained. *Hopkins* v. *Gromovsky,* 198 Va. 389, 394, 94 S.E.2d 190, 193 (1956). But when a witness testifies as an expert, the witness may be cross-examined by reading to the witness pertinent extracts from a scientific book or article, which the witness recognizes as authoritative, and asking whether the witness agrees or disagrees with the statements in the writing. *Id.* at 395, 94 S.E.2d at 194. This procedure may be used merely "to test the knowledge and accuracy" of the expert, *id.*; use as substantive evidence of the truth of the statements or opinions in the article is specifically disallowed. *Todd* v. *Williams,* 242 Va. 178, 182-83, 409 S.E.2d 450, 452-53 (1991).

In the present case, by stating that the expert witness "admitted the same findings described in the publication that was used to cross-examine him," the majority implies that the content of the publication is admissible as substantive evidence and, because the article was improperly used, that error became harmless when the witness offered the same evidence himself. But whether the witness "admitted the

same findings" is irrelevant in a consideration of the proper use of the medical publication; the content of the publication is not substantive evidence, only a means to attack the expert's credibility by testing the "knowledge and accuracy" of the witness. Thus, the so-called "admission" by the expert should not be employed as a basis for a harmless-error ruling; for error relating to credibility to be harmless in this context, the record must establish that the expert's credibility was impaired by other cross-examination or other evidence, which is not the situation here.

Furthermore, even if the majority does not imply that content of the publication may be used as substantive evidence, I do not agree that the record supports the conclusion that the expert witness confirmed the findings of the article by testimony "independent" of the article. The entire last phase of cross-examination of the witness centered around the article and its contents, which was improperly used without proper foundation, as the majority holds.

Plaintiff's counsel had set the stage for the discussion by referring to the rate of survival of patients with a lesion the size of the plaintiff's, and by asking the witness to agree with the opinion from the publication "that with lesions of two centimeters or less, you can have between a 53 percent to an 80 percent survivability between four to five years." Five questions later, the following colloquy between plaintiff's counsel and the witness took place, giving rise to the majority's "independent" rationale:

"Q Okay; and let's say in the abstract then, stage I cancers, do you agree or disagree, that however they're found out to be stage I, whether clinically or whether surgically, stage I cancers have been found to carry between 53 and 80 percent survivability?

A No. I don't agree with that.

Q Thank you.

A Surgically staged cancers have been found to have that kind of survival."

The expert's second answer was not "independent" of the questioning that improperly employed the publication. The cross-examiner's use of "in the abstract" did not make the expert's second answer unrelated, unconnected, or detached from the line of questioning based on the tainted publication. Rather, it was directly connected to, related

to, and associated with the improper use of the article; the interrogation even employed precisely the same percentages set forth in the publication.

A trial court's erroneous ruling, to constitute reversible error, must be material and prejudicial to the interests of the party complaining of it. *CSX Transp., Inc.* v. *Casale,* 247 Va. 180, 183, 441 S.E.2d 212, 214 (1994). In my opinion, the extensive use of inadmissible opinions from the tainted publication was material and prejudicial to the defendants' interests.

I would not reinstate the verdict but would remand this case for a new trial on all issues.