**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

ESTATE OF MELVIN R. WILSON,
Plaintiff-Appellant,

v.                                                                No. 95-1003

UNITED STATES OF AMERICA,
Defendant-Appellee.

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
T. S. Ellis, III, District Judge.
(CA-94-101)

Argued: March 7, 1996

Decided: April 15, 1996

Before RUSSELL and WILKINS, Circuit Judges, and CHAPMAN,
Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Hunter Craycroft Harrison, Jr., McLean, Virginia, for
Appellnt. Dennis Edward Szybala, Assistant United States Attorney,
Alexandria, Virginia, for Appellee. **ON BRIEF:**  Helen F. Fahey,
United States Attorney, Alexandria, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Melvin R. Wilson's wife brought this medical malpractice action on behalf of his estate (the Estate) under the Federal Tort Claims Act (FTCA), as amended, 28 U.S.C.A. §§ 1346(b), 2671-2680 (West 1993), alleging that physicians at the Hunter Holmes McGuire Medical Center (the McGuire Center), a hospital operated by the United States Department of Veterans Affairs, caused Wilson's death by negligently failing to diagnose his lung cancer. The district court entered judgment in favor of the Government following a trial without a jury, and the Estate appeals. We affirm.

I.

Wilson underwent surgery for duodenal ulcers at the McGuire Center in August 1989. In preparation for the procedure, two chest x-rays were taken, neither of which showed any evidence of lung cancer. And, two post-operative visits to the McGuire Center during 1989 revealed that Wilson was recuperating from the surgery without complication. Subsequently, in June and July 1990, Wilson returned to the McGuire Center complaining of stomach pain and vomiting. An examination revealed no active ulcer disease. He was given gastric medication and released. Wilson failed to keep a follow-up appointment in October 1990.

He next visited the McGuire Center in October 1991, suffering pain in his left hip, leg, and foot. Wilson was treated and instructed to return in two weeks, at which time he was admitted. Physicians determined that Wilson's symptoms were caused by a narrowing of the iliac artery and that surgery was unnecessary. Consequently, he was released with medication for his circulatory problem. Shortly thereafter, Wilson was diagnosed with lung cancer following his emergency admission to another hospital with complaints of slurred

2

speech and numbness on his right side. He was transferred to the McGuire Center, where physicians determined that his condition was terminal. Wilson died approximately three weeks later.

The Estate instituted this FTCA suit, claiming that the physicians at the McGuire Center negligently failed to diagnose the lung cancer, thereby depriving Wilson of a substantial possibility of a cure. Wilson's wife testified at trial that during his visits to the McGuire Center, Wilson made numerous complaints that the physicians failed to investigate or, in some instances, to enter in his medical records. The Estate also presented expert testimony that physicians at the McGuire Center breached their duty of care* by failing to investigate adequately Wilson's complaints and that physicians at hospitals maintained by the Department of Veterans Affairs were interested only in diseases related to military service. In response, the Government presented the testimony of two doctors who, based on the medical records, opined that the physicians at the McGuire Center complied with the standard of care and that Wilson's lung cancer either was not present or was not detectible until long after his July 1990 visit. They also testified that the circulatory problems Wilson suffered in 1991 were unrelated to his cancer.

At the close of the evidence, the district court entered judgment for the Government, concluding that the Estate had not proven that the physicians at the McGuire Center breached the standard of care. The court also determined that the Estate had failed to establish proximate causation because it found that Wilson's lung cancer developed after he was examined at the McGuire Center in July 1990.

II.

The Estate maintains that the district court erred in permitting the Government's two expert witnesses to testify. It claims that under the law of Virginia these doctors were not competent to render an opinion on the standard of care. See 28 U.S.C.A.§ 1346(b); Va. Code Ann. § 8.01-581.20(A) (Michie 1992). The Government, however, asserts that the provisions of Virginia law concerning expert qualification are

_____

*The parties agreed before trial that the relevant standard of care was that of a primary care provider.

3

inapplicable in this FTCA action and that, instead, Federal Rule of Evidence 702 controls the admission of expert testimony. We need not resolve which standard governs the admission of this testimony because our review of the record convinces us that under either analysis, the district court did not abuse its discretion in allowing the testimony. See Scott v. Sears, Roebuck & Co., 789 F.2d 1052, 1055 (4th Cir. 1986) (decision whether to admit expert testimony is reviewed for abuse of discretion under Rule 702); Henning v. Thomas, 366 S.E.2d 109, 112 (Va. 1988) (appellate court reviews admission of expert testimony under Va. Code Ann. § 8.01-581.20(A) for an abuse of discretion).

III.

The Estate also argues that it proved proximate causation because it showed that Wilson was deprived of a "substantial possibility of survival." Hicks v. United States, 368 F.2d 626, 632 (4th Cir. 1966). We disagree. The district court properly concluded that the Estate was required to establish that an investigation of Wilson's complaints more likely than not would have revealed lung cancer and that if the cancer had been detected, Wilson probably would have survived. See Hurley v. United States, 923 F.2d 1091, 1093-95 (4th Cir. 1991) (interpreting the phrase "substantial possibility" from Hicks as "tantamount to a probability")(internal quotations marks omitted); see also Griffett v. Ryan, 443 S.E.2d 149, 152 (Va. 1994) (concluding that plaintiff demonstrated proximate causation when trial testimony established that a high likelihood existed that an operation at the time the physician breached his duty of care would have resulted in the patient being saved).

IV.

We have reviewed the remainder of the Estate's arguments and conclude that they are without merit. Consequently, we affirm the judgment of the district court.

AFFIRMED

4