Present: Carrico, C.J., Compton, Lacy, Hassell, Keenan, Koontz, JJ., and Poff, Senior Justice

MARY ESTELLA POWELL,
EXECUTRIX OF THE ESTATE OF
WILLIAM G. POWELL, JR., DECEASED

OPINION BY

v. Record No. 990319      SENIOR JUSTICE RICHARD H. POFF

January 14, 2000

ANDREW MARGILETH, M.D.

FROM THE CIRCUIT COURT OF THE CITY OF FREDERICKSBURG
John W. Scott, Jr., Judge

This litigation commenced in January 1994 when William G. Powell, Jr., (Powell) filed a motion for judgment against Dr. C. R. Massey, III, and Dr. Andrew Margileth alleging medical malpractice. Following Powell's death in 1995, his widow, Mary Estella Powell, qualified as executrix of his estate, and the trial court converted the case into a wrongful death action.

At the first trial of the case, the executrix non-suited Dr. Margileth, and the jury returned its verdict in favor of Dr. Massey. In April 1996, the executrix filed a motion for judgment against Dr. Margileth alleging that his misdiagnosis and treatment of his patient caused Powell's death from cancer-related pneumonia. At the second trial conducted in June 1998, the trial court granted the defendant's motion to strike the plaintiff's evidence, and we awarded the plaintiff an appeal from the judgment entered on that ruling.

We will review the chronology of the facts in evidence related to questions presented by the plaintiff's assignment of error.

On January 9, 1992, Dr. Massey, a specialist in otolaryngology, measured a node in Powell's neck as 4 cm x 3 cm and ordered a CT scan. As interpreted by a radiologist, the scan conducted January 11, 1992 indicated that the size of the "left cervical mass . . . is due to an enlarged internal jugular node which most likely is an abscess . . . ."

On January 14, 1992, Dr. Massey aspirated fluid from the enlarged node. Although he discussed the CT scan with Powell and ordered cultures, he did not suggest a need for an examination to rule out cancer.

Because Powell had told him that he had experienced some exposure to cats, Dr. Massey referred Powell on January 21, 1992 to Dr. Margileth, an infectious disease specialist experienced in the diagnosis and treatment of cat scratch disease. On January 27, 1992, Dr. Margileth performed tests for tuberculosis and cat scratch disease and measured the "swelling . . . in the left anterior superior neck" as 4.4 x 6 x 2.6 cm. He advised his patient that he had cat scratch disease and prescribed antibiotics. The results of the CT scan had been furnished to Dr. Margileth.

On February 18, 1992, Dr. Massey palpated a nodule in Powell's neck which measured 4 x 2.8 cm. Dr. Massey performed another examination on April 7, 1992 in the course of which he suggested the possibility of cancer.

In June 1992, Powell discovered a second lump in his neck and in July went for help to the Veterans Administration Medical Center Hospital. A needle aspiration of the two lumps diagnosed cancer representing a progression from stage III in January 1992 when the CT scan was conducted to stage IV in July 1992. Powell underwent radiation therapy, surgery, and other treatment but died of cancer three years later at the age of 40.

In the case of a wrongful death resulting from medical malpractice, the plaintiff must prove a breach of the standard of care and a proximate causal relationship between that breach and the injury alleged. Griffett v. Ryan, 247 Va. 465, 470, 443 S.E.2d 149, 151 (1994); see also St. George v. Pariser, 253 Va. 329, 484 S.E.2d 888 (1997); Blondel v. Hays, 241 Va. 467, 403 S.E.2d 340 (1991).

When ruling on a defendant's motion to strike the plaintiff's evidence, the trial court must draw all reasonable inferences the evidence may raise in favor of the plaintiff. Hadeed v. Medic-24 Ltd., 237 Va. 277, 285-86, 377 S.E.2d 589, 593 (1989). If it appears from the record that such inferences are reasonable, then the issues concerning standards of care and

3

proximate cause are questions of fact to be determined by a jury.

In a memorandum opinion dated October 6, 1998 explaining its decision to grant the defendant's motion to strike the plaintiff's evidence, the trial court held that "there is no evidence or reasonable inference that would allow a jury of reasonable persons to conclude that the Defendant's breaches of the standards of care proximately caused the decedent's injuries; adversely altered the required method of treatment; or adversely affected his rate of survival."

Dr. Francois E. Holder, one of the plaintiff's expert witnesses, testified that the defendant's misdiagnosis of cat scratch disease caused his patient delay in diagnosis and treatment of his cancer from January until July, and that if he had been "informed of the possibility of cancer in January, and options were offered in terms of biopsy for fine needle aspirations, Mr. Powell would have had a diagnosis of cancer probably the first week of February." Asked whether the delay was "a direct and proximate cause of the failure of Dr. Margileth to comply with the required standard of care," Dr. Holder answered, "Yes, it was."

Dr. M. Karim Ali, who had treated Powell at the VA Hospital, testified as an expert in the staging, treatment, and surgery of cancer. Asked what would have been Powell's

4

"percentage chance of survival for 5 years" if he had "received him as a patient based on the January 11, 1992 CAT scan report," which identifies the cancer as stage III, Dr. Ali said that Powell would have had "[a]round 75 percent" chance of surviving 5 years compared to the "15 to 20 percent" chance he had in July 1992.

Dr. Oscar Tercilla, a professor at Medical College of Virginia, was qualified as an expert in the staging and treatment of cancer, estimating prognosis at the cancer stage, and medical treatment caused by failure to make a timely diagnosis.  Dr. Tercilla testified as follows:

> If Mr. Powell had been treated in January as opposed to July it is my opinion that he had a higher likelihood of being controlled of this disease than he had when he presented at the VA in July.  Because of that, you would have avoided his recurrence which occurred in July of 1993 with the tumor reappearing in his tonsil and subsequent treatment that came from that.

Absent a recurrence, the witness agreed "[i]n all likelihood" that Dr. Margileth's patient "would still be alive."

Dr. Barbara Kipreos, a pathologist at the VA center, was asked her opinion whether, "if Dr. Margileth would have requested a fine needle aspirate at the Mary Washington Hospital pathology laboratory" in January 1992, "Mr. Powell's cancer would have been diagnosed at that time."  In reply, the witness

5

said, "Yes, it is my opinion that it would have been diagnosed at that time."[*]

We disagree with the trial court's ruling that "there is no evidence or reasonable inference that would allow a jury of reasonable persons to conclude that the Defendant's breaches of the standards of care proximately caused the decedent's injuries . . . or adversely affected his rate of survival." Qualified experts in the field testified otherwise.

We hold, therefore, that the trial court erred in granting the defendant's motion to strike the plaintiff's evidence, and we will reverse the judgment entered below and remand the case for a new trial in accordance with this opinion.

<u>Reversed and remanded</u>.

---

[*] The trial court found "no evidence before this court" that Powell would have consented to a fine needle aspiration if Dr. Margileth had recommended one during his examinations on January 27 and January 30. Irrespective of the issue whether such proof was required, we note that the record shows that Powell consented to such procedure on January 14 when his primary care physician, Dr. Massey, aspirated the large node in his neck.