Present:  All the Justices

JANICE WASHBURN

v. Record No. 011034  OPINION BY JUSTICE CYNTHIA D. KINSER
                                        APRIL 19, 2002
PETER KLARA, M.D., ET AL.

FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Joseph A. Leafe, Judge

In this claim of battery, the issue is whether the evidence raises a reasonable inference that the defendant surgeon intentionally performed a surgical procedure exceeding the scope of the plaintiff's consent.  Because we conclude that the plaintiff presented sufficient evidence to create a factual dispute on this issue, which a jury must resolve, we will reverse the circuit court's judgment striking the plaintiff's evidence and remand the case for a new trial.

FACTS AND MATERIAL PROCEEDINGS

In September 1997, Britt M. Borden, M.D., performed a surgical procedure known as an anterior cervical diskectomy on Janice L. Washburn.  At the time of the operation, Dr. Borden was training in a fellowship program at Eastern Virginia Medical School, with Peter Klara, M.D., acting as Dr. Borden's supervising faculty member.  The surgery took place at the Virginia Beach General Hospital (the Hospital).

Dr. Borden had diagnosed Washburn with C6-7 pseudoarthrosis[1] after a bone scan revealed dense scar tissue at the C6-7 level of her spine. That scar tissue resulted from a previous surgical fusion that Washburn had undergone in 1994. To relieve pain in Washburn's neck and left arm, Dr. Borden recommended the anterior cervical diskectomy procedure. He described the procedure as "removing the bone and fibrous tissue that are in the area of the old fusion that didn't take and replacing it with another graft, and then placing a plate on the spine to hold it together while it heals." Dr. Klara agreed that Washburn was likely to benefit from the surgery.

Prior to surgery, Washburn executed a written consent form. The form specified authorization for a "C67 Anterior Cervical Diskectomy" and described the operation in layman's terms as "remove bone & fibrous tissue and replace graft[.]" The consent form also authorized "the performance of such operation(s) and procedure(s) in addition to or different from those now contemplated . . . which the . . . physician . . . consider[s] necessary or

---

[1] Pseudoarthrosis is the "failure of spinal fusion to occur following surgery." Taber's Cyclopedic Medical Dictionary 1583 (18th ed. 1997).

advisable in the exercise of his[] professional [judgment] in accordance with reasonable medical standards."

Because the surgery allegedly caused Washburn to suffer "permanent laryngeal and/or recurrent nerve damage," Washburn filed the present action against Drs. Borden and Klara, Peter Klara, M.D., P.C., and the Hospital.[2]  Washburn asserted theories of recovery based upon medical malpractice, emotional distress, battery, lack of informed consent, fraud, and receiving money under false pretenses. Prior to trial, the circuit court sustained demurrers to Washburn's claims of emotional distress and receiving money under false pretenses.[3]  During the trial, Washburn

---

[2] This is the second action filed by Washburn against these defendants.  In the first case, the trial court sustained Dr. Borden's plea of sovereign immunity with regard to all claims based on negligence.  The court also granted the Hospital's motion for summary judgment. Washburn then nonsuited her remaining claims and appealed from the trial court's judgment on the issue of sovereign immunity.  While that appeal was pending, Washburn filed the present action.  In an order dated November 3, 2000, we affirmed the trial court's judgment that Dr. Borden was entitled to sovereign immunity on the negligence claims.

[3] The circuit court also sustained the Hospital's demurrer to Washburn's claim of vicarious liability and its special plea of res judicata with regard to the other claims asserted against it.  Although Washburn assigned error to the circuit court's ruling with regard to the Hospital, we granted the Hospital's motion to dismiss Washburn's petition for appeal in an order dated November 8, 2001.  Thus, the Hospital is not a party to this appeal. Hereinafter, references to "the defendants" do not include the Hospital.

voluntarily dismissed her claim of medical malpractice and presented evidence to the jury only with regard to the remaining counts.

As pertinent to the issue in this appeal, Dr. Borden testified at trial that he performed the surgery at the C6-7 level, as specified in Washburn's written consent. He denied that he operated, either intentionally or unintentionally, at the C7-T1 level of Washburn's spine. However, post-operative radiology reports indicated evidence of a fusion at the C7-T1 level, in addition to a fusion at the C6-7 level. One of the radiology readings admitted into evidence by Washburn stated that a "screw is projecting over the inferior aspect of the T1 vertebral body." Although Dr. Borden acknowledged that Washburn's cervical fusion in 1994 did not involve the use of any hardware and that he was the first person to place any screws and plates in Washburn's spine, he maintained that he did not operate at the C7-T1 level. Dr. Borden also stated that there was no medical reason to operate at the C7-T1 level.

At the close of Washburn's case-in-chief, the circuit court granted the defendants' motion to strike the evidence, specifically finding, as pertinent to the claim of battery, that there was no evidence that the surgery

4

exceeded the scope of Washburn's consent.  The court

subsequently entered a final order granting judgment for

the defendants.  We awarded Washburn this appeal, limited

solely to the issue whether the circuit court erred in

striking the evidence with regard to the count alleging

battery.[4]

ANALYSIS

We have stated that

> [w]hen the sufficiency of a plaintiff's evidence
> is challenged upon a motion to strike the
> evidence at the conclusion of the plaintiff's
> case-in-chief, the trial court should in every
> case overrule the motion where there is any doubt
> on the question.

Rizzo v. Schiller, 248 Va. 155, 159-60, 445 S.E.2d 153, 156

(1994) (quoting Brown v. Koulizakis, 229 Va. 524, 531, 331

S.E.2d 440, 445 (1985) (citation omitted)).  The trial

court must also "give the plaintiff 'the benefit of all

substantial conflict in the evidence, and all fair

inferences that may be drawn therefrom.' "  Hadeed v.

Medic-24, Ltd., 237 Va. 277, 285-86, 377 S.E.2d 589, 593

(1989) (quoting Walton v. Walton, 168 Va. 418, 423, 191

S.E. 768, 770 (1937)); see also Powell v. Margileth, 259

---

[4] The defendants filed separate motions to dismiss Washburn's petition for appeal, asserting that Washburn had failed to file transcripts material to the consideration of her assignments of error.  Those motions were denied by an order of this Court dated November 8, 2001.

5

Va. 244, 246, 524 S.E.2d 434, 435 (2000). Applying these principles, we conclude that the evidence in this case, when viewed in the light most favorable to Washburn, is open to the reasonable inference that Dr. Borden performed a cervical diskectomy at two levels of Washburn's spine, thereby exceeding the scope of her consent. Thus, we find that the circuit court erred by striking Washburn's evidence with regard to the claim of battery.

This Court has recognized that the physician-patient relationship is a consensual one. See, e.g., Pugsley v. Privette, 220 Va. 892, 899, 263 S.E.2d 69, 74 (1980); Lyons v. Grether, 218 Va. 630, 633, 239 S.E.2d 103, 105 (1977). Thus, unless an emergency or unanticipated problem arises, a physician or surgeon must first obtain the consent of a patient before treating or operating on that patient. See 61 Am. Jur. 2d Physicians, Surgeons, and Other Healers § 175 (1981). "An unauthorized operation is a wrongful and unlawful act for which the surgeon will be liable in damages." Pugsley, 220 Va. at 899, 263 S.E.2d at 74.

A written consent, such as the one executed by Washburn, "does not constitute consent to an operation other than the one to be performed when there is no evidence that a necessity arose during the authorized operation." Lloyd v. Kull, 329 F.2d 168, 170 (7th Cir.

6

1964).  Consequently, in the absence of such necessity, an operation without consent or the extension of an operation beyond the scope of the patient's consent constitutes what is sometimes referred to as a "'technical' assault and battery."  See Lane v. United States, 225 F. Supp. 850, 852 (E.D. Va. 1964); Hively v. Higgs, 253 P. 363, 365 (Ore. 1927); Nolan v. Kechijian, 64 A.2d 866, 868 (R.I. 1949). We discussed this form of "technical" battery in Pugsley, where we stated that "[i]t is well established that, given the proper factual conditions and circumstances, a patient can maintain against a physician an action based on assault and battery for acts arising out of the physician's professional conduct" and that " '[a] surgical operation on the body of a person is a technical battery or trespass unless he or some authorized person consented to it.' " Pugsley, 220 Va. at 899, 263 S.E.2d at 74 (quoting what is now 61 Am. Jur. 2d Physicians, Surgeons, and Other Healers § 197 (1981)).

Later, in Woodbury v. Courtney, 239 Va. 651, 391 S.E.2d 293 (1990), we again addressed the tort of battery in the context of medical malpractice.  In Woodbury, a patient gave her consent for a breast biopsy.  When the surgeon performed a partial mastectomy, the patient brought an action against the surgeon, alleging, among other

7

things, battery. In defense, the surgeon asserted that the terms "biopsy" and "partial mastectomy" are synonymous and that, therefore, the patient consented to the partial mastectomy. With respect to the claim of battery, we held that the trial court erred in granting summary judgment in favor of the defendant surgeon, because the plaintiff was not required to present expert medical testimony in order to prove her allegations of battery. We concluded that "[a] factual issue was created and the jury should have been allowed to determine the extent of the permission [the patient] granted to [the surgeon] and whether he exceeded the scope of that permission. If [the surgeon] exceeded the scope of that permission, then he committed a battery." Id. at 654, 391 S.E.2d at 295 (citing Pugsley, 220 Va. at 899, 263 S.E.2d at 74).

In the instant case, Washburn's claim of battery is predicated on her allegations that Dr. Borden exceeded the scope of her consent by performing a cervical diskectomy at the C7-T1 level of her spine, in addition to the diskectomy at the C6-7 level to which Washburn had consented. According to Washburn, the evidence, primarily the post-operative radiology reports, established a prima facie case of battery and, in light of Dr. Borden's insistence that he did not, either intentionally or unintentionally, fuse the

8

vertebrae at the C7-T1 level, created a factual question for the jury to decide.

Dr. Borden, however, contends that Washburn failed to establish a prima facie case of battery because there was no evidence that he intentionally exceeded the scope of Washburn's consent. On brief, Dr. Borden acknowledged that Washburn presented some evidence that he operated beyond the C6-7 level and that her consent was limited to surgery at that level. While Dr. Borden maintains that he operated only at the C6-7 level, he nevertheless argues that, if a fusion of Washburn's vertebrae at the C7-T1 level occurred during the surgery, it resulted from his negligence or lack of skill and not because he intentionally operated at that level. Thus, he contends that he did not commit a battery on Washburn.

In granting the defendants' motion to strike Washburn's evidence, the circuit court concluded that there was no evidence that the surgery exceeded the scope of Washburn's consent. However, the radiology reports indicating fusion at the C7-T1 level are at least some evidence that Dr. Borden may have operated at a level other than that specified in Washburn's written consent. Although the consent authorized additional operations or procedures deemed necessary or advisable, Dr. Borden

admitted that there was no medical reason to operate at the C7-T1 level.

Thus, we conclude that evidence presented by Washburn was sufficient to present a factual issue, for the jury's determination, whether Dr. Borden intentionally performed a cervical diskectomy at two levels of Washburn's spine, thus exceeding the scope of her consent. As we stated in Woodbury, if a surgeon exceeds the scope of a patient's consent, then the doctor has committed a battery. 239 Va. at 654, 391 S.E.2d at 295. Accordingly, we will reverse the judgment of the circuit court and remand for a new trial on Washburn's claim of battery.[5]

Reversed and remanded.

---

[5] We remand the case as to all the defendants. When the circuit court granted the motion to strike Washburn's evidence, the court stated from the bench that the vicarious liability question necessarily followed the battery claim and that, since there was no issue to go to the jury on the battery claim, the motion to strike with regard to Dr. Klara's vicarious liability was also granted. Thus, the court never addressed the merits of the question whether Dr. Klara and his professional corporation can be held vicariously liable for Dr. Borden's actions. Hence, we will not address the arguments presented on appeal regarding that question.