COURT OF APPEALS OF VIRGINIA


Present:   Judges Elder, Felton and Senior Judge Coleman
Argued at Richmond, Virginia


RICHMOND DEPARTMENT OF SOCIAL SERVICES
                                                     MEMORANDUM OPINION[*] BY
v.        Record No. 1650-03-2                       JUDGE WALTER S. FELTON, JR.
                                                             JULY 13, 2004
VICTORIA ENRIQUEZ


              FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                            Randall G. Johnson, Judge

              Evelyn B. Meese, Assistant City Attorney (Mark E. Yeaker,
              Guardian *ad litem* for the minor child; Office of the City Attorney,
              on briefs), for appellant.

              Ronald R. Tweel (Elizabeth P. Coughter; Peter McIntosh; Michie,
              Hamlett, Lowry, Rasmussen & Tweel, P.C., on brief), for appellee.


        The Richmond Department of Social Services (RDSS) appeals the trial court's denial of

its petition to terminate Victoria Enriquez's residual parental rights to her son, D.L., and its

denial of RDSS's petition to adopt a permanent foster care service plan with a goal of adoption

for D.L.  RDSS contends that its evidence was sufficient to support its petitions to terminate

Enriquez's parental rights and to approve its foster care service plan.  RDSS also argues that the

trial court incorrectly interpreted the statutory requirements for termination under Code

§ 16.1-283(B) and 16.1-283(C)(2) and that it erred in finding that Code § 16.1-283(E) as applied

in these proceedings was an unconstitutional *ex post facto* law.  We affirm the judgment of the

trial court in denying the termination of Enriquez's parental rights to D.L., and in refusing to

adopt RDSS's foster care service plan for D.L. with a goal of adoption.  In affirming the trial

────────────────────

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

court's judgment that RDSS failed to meet its burden of proving by clear and convincing evidence that it was in D.L.'s best interest to terminate Enriquez's parental rights pursuant to Code § 16.1-283(E)(iv), we conclude that the same evidence by necessity would not be sufficient to support termination under the aggravated abuse requirements of Code § 16.1-283(E)(iv). It is therefore not necessary for us to address the validity of RDSS's attempted amendment to add Code § 16.1-283(E)(iv) after Enriquez appealed to the circuit court.[1]

## I. BACKGROUND

Because this memorandum opinion carries no precedential value and the parties below are fully conversant with the record, we cite only those facts necessary to a disposition of the appeal. We view the evidence in the light most favorable to the prevailing party below and grant to it all reasonable inferences fairly deducible therefrom. Logan v. Fairfax County Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 462 (1991). Victoria Enriquez, who at age 15 became pregnant following a rape, gave birth to D.L. on November 15, 1997. The identity of the child's biological father is unknown. Enriquez and D.L. began living with Yasser Aramin shortly after D.L.'s birth. At that time, Enriquez and Aramin resided in Chicago, Illinois. They subsequently relocated to Richmond, where Aramin owns and runs a business. At the time of trial, Enriquez and Aramin had three children together and she was pregnant with a fourth. They are not legally married.

In May 2001, RDSS removed D.L. from Enriquez's care after receiving complaints that he was being physically abused. RDSS placed D.L. in foster care, and he has received treatment for various developmental delays and emotional abuse. When RDSS initially removed D.L.

---

[1] In M. G. v. Albemarle County, 41 Va. App. 170, 583 S.E.2d 761 (2003), this Court noted that the trial court "implicitly refused to amend the petition and did not consider whether termination could occur based on a finding of aggravated circumstances under subsection (E)(iv)" where the original petition filed in juvenile and domestic relations district court occurred prior to the amendment of this provision. Id. at 175 n.2, 583 S.E.2d at 763 n.2.

from the home, the goal of its foster care service plan was to return the child to Enriquez with a target date of May 16, 2002.

Following the child's removal, RDSS referred Enriquez and Aramin to various agencies and programs, including Stop Child Abuse Now (SCAN) classes, individual counseling and domestic violence counseling, for regular visitation with D.L., and for stabilization services for the children remaining in the couple's home. RDSS also arranged for Enriquez to have a psychological evaluation.

On January 16, 2002, four months before its target date of May 16, 2002 to return D.L. to Enriquez's care, RDSS revised its initial foster care service plan from return to Enriquez to adoption and filed the recommended plan with the juvenile court. The revised plan retained the same target date of May 16, 2002. Thereafter, no additional services were offered to Enriquez. Proceeding with its goal of adoption, RDSS petitioned the juvenile and domestic relations district court to terminate Enriquez's parental rights pursuant to Code § 16.1-283(B), (C)(1), (C)(2), and (D). On May 14, 2002, a little over a year after D.L.'s placement in foster care, the juvenile and domestic relations district court approved RDSS's foster care service plan with the goal of adoption pursuant to Code § 16.1-281. It also granted RDSS's petition to terminate the parental rights of Enriquez. The court ordered that custody of D.L. remain with RDSS. Enriquez appealed the decisions to the circuit court. On February 10, 2003, RDSS amended its petition to terminate Enriquez's parental rights to add Code § 16.1-283(E)(iv), alleging that Enriquez subjected D.L. to "aggravated circumstances." This amendment occurred after Enriquez timely appealed the ruling of the juvenile and domestic relations district court terminating her parental rights and within ten days of the scheduled *de novo* trial in the circuit court.

On February 21 and 24, 2003, the trial court received evidence in the *de novo* proceedings *ore tenus*. The record reflects that when D.L. was removed from Enriquez's care,

he was taken to the hospital for observation and evaluation. Medical records from that evaluation reflect that D.L suffered from numerous injuries consistent with abuse. However, none of the injuries required medical treatment. The physician who examined D.L. at the hospital testified that, in his opinion, many of D.L.'s injuries were not accidental in nature and that "the child was abused." From the evidence presented to it, the trial court found that while Enriquez did not personally inflict any of the injuries that D.L. suffered, she was aware of the abuse and did not interfere to prevent it from occurring.

Following RDSS's presentation of its case-in-chief, RDSS withdrew its petition to terminate Enriquez's parental rights under Code § 16.1-283(C)(1) and 16.1-283(D). The trial court then granted Enriquez's motion to strike RDSS's evidence on its petitions to terminate her parental rights under Code § 16.1-283(B) and 16.1-283(C)(2). It found that RDSS "failed to prove that it had made reasonable and appropriate efforts to rehabilitate Victoria Enriquez or to strengthen the parent-child relationship as required by Code § 16.1-283(B) and 16.1-283(C)(2)." Citing Code § 16.1-283(B), the trial court found that it was "not able to say at this point that it's not reasonably likely that the conditions that resulted in such abuse and neglect can be substantially corrected." In its final order, the trial court also dismissed RDSS's petition under the "aggravated circumstances" prong of Code § 16.1-283(E)(iv), finding that this subsection could not be applied retroactively to the circumstances in this case.

The trial court ordered that D.L. remain in temporary custody of RDSS in foster care, and remanded the matter to the juvenile and domestic relations district court for such further proceedings as it might deem appropriate. RDSS appealed the various judgments of the trial court to this Court.

## II.  ANALYSIS

The right of a parent "in the care, custody, and control" of her child is one of the oldest of the fundamental liberty interests recognized by the courts.  Troxel v. Granville, 530 U.S. 57, 65 (2000) (citing Pierce v. Society of Sisters, 268 U.S. 510, 534-35 (1925)).  The Due Process Clause of the Fourteenth Amendment guarantees a parent's liberty interest in "the companionship, care, custody and management of his or her children."  Stanley v. Illinois, 405 U.S. 645, 651-52 (1972); see also Santosky v. Kramer, 455 U.S. 745, 751 (1982).  However, this constitutional right is not absolute.  It must be balanced against competing legitimate state interests to protect the welfare of its citizens, including protecting children from abuse and neglect in the home.  Lassiter v. Dep't Soc. Serv. of Durham City, 452 U.S. 18, 27 (1981); see also Stanley, 405 U.S. at 652-53.  The Virginia Supreme Court has recognized the significance of this balancing of interests, noting that:

> [The Court's] prior decisions clearly indicate a respect for the natural bond between children and their natural parents.  The preservation of the family, and in particular the parent-child relationship, is an important goal for not only the parents but also government itself . . . .  Statutes terminating the legal relationship between parent and child should be interpreted consistently with the governmental objective of preserving, when possible, the parent-child relationship.

Weaver v. Roanoke Dep't of Human Res., 220 Va. 921, 926, 265 S.E.2d 692, 695 (1980).

The General Assembly enacted Code § 16.1-283 to provide a framework for determining the circumstances under which the Commonwealth may sever parental rights to a child.  The statute provides for a careful balancing of the parent's constitutionally protected right in the care and custody of her child, with the Commonwealth's interest in protecting the child from harm.  A parent's rights to her child may be terminated only if "clear and convincing evidence" demonstrates that the circumstances that caused the Commonwealth to remove the child from the parent cannot be remedied within a reasonable period of time.  See Code § 16.1-283(B).  Clear

- 5 -

and convincing evidence is "that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but . . . [less than] a reasonable doubt . . . ." Gifford v. Dennis, 230 Va. 193, 198 n.1, 353 S.E.2d 371, 373 n.1 (1985).

This high burden of proof is essential as "[t]he termination of parental rights is a grave, drastic, and irreversible action. When a court orders termination of parental rights, the ties between the parent and child are severed forever, and the parent becomes 'a legal stranger to the child.'" Lowe v. Dep't of Pub. Welfare of City of Richmond, 231 Va. 277, 280, 343 S.E.2d 70, 72 (1986) (quoting Shank v. Dep't of Soc. Servs., 217 Va. 506, 509, 230 S.E.2d 454, 457 (1976)); see Weaver, 220 Va. at 926, 265 S.E.2d at 695; see also Santosky, 455 U.S. at 769 (requiring "clear, positive and convincing evidence," for termination of parental rights by the state).

## A. THE MOTION TO STRIKE

After the close of RDSS's case-in-chief, the trial court sustained Enriquez's motion to strike the evidence presented by RDSS as failing to prove, by clear and convincing evidence, that it was in the child's best interests to terminate Enriquez's parental rights as required under Code § 16.1-283(B) and 16.1-283(C)(2). RDSS contends that the trial court was plainly wrong and that it erred in requiring it to provide reasonable and appropriate efforts to assist Enriquez in removing those conditions that led to the placement of D.L. into foster care. RDSS also argues that it presented to the trial court clear and convincing evidence to support its petitions for termination. Our Supreme Court has stated that

> [w]hen the sufficiency of a plaintiff's evidence is challenged upon a motion to strike the evidence at the conclusion of the plaintiff's case-in-chief, the trial court should in every case overrule the motion where there is any doubt on the question. The trial court must also "give the plaintiff 'the benefit of all substantial conflict

- 6 -

in the evidence, and all fair inferences that may be drawn therefrom.'"

Washburn v. Klara, 263 Va. 586, 590, 561 S.E.2d 682, 685 (2002) (citations omitted).  Applying these principles, and considering the evidence presented and all inferences fairly drawn therefrom in the light most favorable to RDSS, the trial court concluded that RDSS had failed to prove that it was in D.L.'s best interest to terminate the parental rights to the only known parent he had.  It also noted that RDSS "had failed to demonstrate that it had made reasonable and appropriate efforts to rehabilitate Enriquez and strengthen the parent-child relationship."  The trial court further noted that from the evidence RDSS had presented in its case-in-chief, that

> [a]lthough [RDSS] had offered some services, . . . it had not offered enough.  With regard to those services that were offered, . . . Enriquez fully took advantage of them, attending parenting classes and therapy provided.  In essence, . . . [RDSS] gave up too fast on Enriquez and did not properly balance the interest of Enriquez and [D.L.] while seeking to preserve the family.

Here, the trial court found there was sufficient evidence to support a finding that D.L. had been abused and that such circumstances presented a sufficient risk to D.L.'s health and safety to warrant his removal by RDSS.  It stated, "I don't have any problems with finding at this stage of the evidence giving the Department the benefit . . . that the neglect or abuse suffered by [D.L.] was presented as serious and substantial threat to his life, health, and development."  It concluded, however, that RDSS had not met its burden, required by Code § 16.1-283(B) and 16.1-283(C)(2), of proving by clear and convincing evidence that Enriquez had failed to remedy the conditions which led to D.L.'s removal.  It was not necessary for the trial court to determine that the child should be returned to Enriquez's immediate care, as long as it concluded that her efforts made it reasonably likely that the child's safe return could occur within a reasonable period of time.  A "reasonable period of time" must be determined from the individual factors and circumstances found in the particular case being considered.  Kaywood v. Halifax County

- 7 -

Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990) (citation omitted).

Determining what period of time is "reasonable" lies within the sound discretion of the trial court. See Knox v. Lynchburg Div. Soc. Serv., 223 Va. 213, 223, 288 S.E.2d 399, 404 (1982).

Here, in considering the motion to strike RDSS's evidence, the trial court properly weighed the evidence presented by RDSS, including the testimony of Enriquez whom it called as a witness, as to the reasonable efforts made by Enriquez to correct or eliminate the conditions that resulted in the abuse. These efforts included her participation in the programs and services recommended by RDSS after the child was removed. RDSS presented evidence that Enriquez and Aramin attended all fourteen weekly SCAN classes. While no "one-on-one" parenting classes were offered to Enriquez, she attended "one-on-one" sessions with the director of community violence services. RDSS also presented evidence that Enriquez began individual counseling in July 2002, even after the juvenile and domestic relations district court granted the petitions to terminate her parental rights. She also visited with D.L. on a bi-weekly basis. The social worker, who arranged the visits, testified that D.L. did fine with the visits with his mother. The foster family also reported that D.L. did fine with the visits. Enriquez frequently brought D.L.'s siblings along, and the children would play together. She attended all of the scheduled visits with her son, and asked for more frequent visitation and for longer visits with D.L.

RDSS also presented evidence from the psychologist, who performed a one-day evaluation of Enriquez. She testified that Enriquez suffered from situational anxiety disorder that made her less likely to stand up to Aramin, but testified that the condition would likely dissipate over time. The psychologist further testified that Enriquez had learned a lot from the parenting classes. She did not evaluate Enriquez for the purpose of termination of parental rights. She added, however, that had she evaluated Enriquez for that purpose, her evaluation process would have been more extensive and would have occurred over several sessions.

When called as a witness in RDSS's case-in-chief, Enriquez testified that she did not physically discipline her son and that, if he were returned to her, she would be better able to watch and control him so that he would not suffer any more injury. She also said that she could leave Aramin if he ever became physically abusive. The record reflects that the trial court found credible Enriquez's testimony, as well as that of the other witnesses, that she had benefited from the parenting programs offered by RDSS. Matters of credibility of witnesses are within the discretion of the trier of fact, here the trial court, and will not be disturbed on appeal unless inherently incredible. See Wheeler v. Wheeler, 42 Va. App. 282, 295-96, 591 S.E.2d 698, 705 (2004).

Based on the record before us, we conclude that the trial court did not err in sustaining Enriquez's motion to strike RDSS's evidence and in finding the evidence insufficient to support termination of her parental rights to D.L.

In matters concerning a child's welfare, "trial courts are vested with broad discretion in making the decisions necessary to guard and to foster a child's best interests." Farley v. Farley, 9 Va. App. 326, 328, 387 S.E.2d 794, 795 (1990). Furthermore, "[w]here, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Martin v. Pittsylvania County Dep't of Social Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986). We presume that the trial court "thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests." Logan, 13 Va. App. at 128, 409 S.E.2d at 463 (citations omitted). The record reflects that Enriquez attended the programs offered by RDSS. It also revealed that RDSS changed its foster care service plan goal from returning D.L. to Enriquez to adoption at a time when Enriquez and Aramin were attending the parenting classes. Finding that Enriquez "fully took advantage" of the rehabilitative options provided, the trial

- 9 -

court reasonably concluded that, "the Department gave up too fast on Enriquez." Based on the evidence presented during RDSS's case-in-chief, the trial court could reasonably conclude that RDSS failed to provide reasonable and appropriate efforts to assist Enriquez to remedy the circumstances that led to D.L.'s placement in foster care as required by Code § 16.1-283(C)(2).

We agree with RDSS that Code § 16.1-283(B) does not require the same level of effort on its part to provide assistance as does Code § 16.1-283(C)(2). At trial, the trial court properly noted that Code § 16.1-283(B) merely permits a trial court to consider efforts made to rehabilitate the parent and that it does not require services be provided by RDSS. Termination of parental rights pursuant to Code § 16.1-283(B) requires proof that Enriquez failed to respond or follow "through with appropriate, available and reasonable rehabilitative efforts on the part of social, medical, mental health or other rehabilitative agencies designed to reduce, eliminate or prevent the neglect or abuse of the child." Code § 16.1-283(B)(2)(c).

The trial court found that RDSS failed to prove by clear and convincing evidence that Enriquez had failed to make a substantial effort to remedy the conditions that led to D.L.'s entering foster care as required by Code § 16.1-283(B). We conclude that the record supports the trial court's finding that the mother made substantial efforts to remedy the conditions leading to D.L.'s placement in foster care.

## B. CODE § 16.1-283(E)

RDSS also argues that it presented sufficient evidence to terminate Enriquez's parental rights by showing that she subjected D.L. to "aggravated circumstances" as required by Code § 16.1-283(E)(iv). It also contends that the trial court erred in holding that legislative amendments to Code § 16.1-283(E)(iv), that took effect after the proceedings in this case had been concluded in the juvenile court, did not apply retroactively to these proceedings.

After Enriquez appealed to the circuit court, RDSS amended its petition to allege that Enriquez's parental rights to D.L. be terminated under Code § 16.1-283(E)(iv).

Code § 16.1-283(E) provides in pertinent part that:

> The residual parental rights of a parent or parents of a child who is in the custody of a local board or licensed child-placing agency may be terminated by the court if the court finds, *based upon clear and convincing evidence*, *that it is in the best interests of the child* and that . . . (iv) the parent has subjected any child to aggravated circumstances.[2]

(Emphasis and footnote added). Code § 16.1-283(E) also permits the "local board or other child welfare agency having custody of the child" to avoid the obligation to "make reasonable efforts to reunite the child with a parent who has been . . . found by the court to have subjected any child to aggravated circumstances."

Because the trial court did not err in finding that the evidence was insufficient for it to terminate Enriquez's parental rights under the abuse standard of Code § 16.1-283(B), we

---

[2]As used in Code § 16.1-283(E)(iv):

> "Aggravated circumstances" means torture, chronic or severe abuse, or chronic or severe sexual abuse, if the victim of such conduct was a child of the parent or a child with whom the parent resided at the time such conduct occurred, including the failure to protect such a child from such conduct, which conduct or failure to protect: (i) evinces a wanton or depraved indifference to human life, or (ii) has resulted in the death of such a child or in serious bodily injury to such a child.

> "Chronic abuse" . . . means recurring acts of physical abuse which place the child's health, safety and well-being at risk.

> "Serious bodily injury" means bodily injury that involves substantial risk of death, extreme physical pain, protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ or mental faculty.

> "Severe abuse" . . . may include an act or omission that occurred only once, but otherwise meets the definition of "aggravated circumstances."

conclude logically that the same quantum of evidence could not support a termination under the more aggravated abuse standard of Code § 16.1-283(E)(iv).

## CONCLUSION

Based on our review of the record as a whole, we conclude that the trial court did not err in striking the evidence of RDSS and dismissing its petitions to terminate the parental rights of Enriquez to D.L., and in not approving its petition to place D.L. in permanent foster care with a goal of adoption.

Accordingly, we affirm the judgment of the trial court.

<u>Affirmed.</u>