COURT OF APPEALS OF VIRGINIA


Present:   Judges Benton, Kelsey and McClanahan
Argued at Richmond, Virginia


DAVID SOUTH AND
 ZELMA SOUTH

                                                    MEMORANDUM OPINION* BY
v.        Record No. 0700-04-2                      JUDGE ELIZABETH A. McCLANAHAN
                                                        MARCH 8, 2005
JENNIFER REBECCA SOUTH


                  FROM THE CIRCUIT COURT OF THE CITY OF HOPEWELL
                            Robert G. O'Hara, Jr., Judge

              Stefan M. Calos for appellant.

              Nathaniel M. Collier, III, for appellee.


        David South (grandfather) and Zelma South (grandmother) appeal from a decision

granting Jennifer Rebecca South (mother) custody of her infant child, G.S.[1]  Grandfather argues

that the trial court erred in:  (1) granting mother's motion to strike the evidence, (2) disregarding

the reports provided by the Court-Appointed Special Advocate (CASA) director and the child's

appointed guardian *ad litem*, (3) requiring a parent to be proven "unfit" before custody may be

awarded to a non-parent, (4) failing to consider the statutory factors and stating the basis of the

decision as required by Code § 20-124.3, and, (5) placing the child in the custody of a parent

where evidence of that parent's unfitness and other special facts and circumstances favored

custody in the non-parents as being in the best interests of the child.  For the reasons that follow,

we affirm the decision of the trial court.

---

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

        [1] Zelma South has died since this appeal was filed.

## I. Background

G.S. was born to mother and Jonathan David South (father) when mother was seventeen years old. The child made her home with father and appellants, her paternal grandparents, for a little over a year, until mother turned eighteen and moved into the appellants' house. Mother and father eventually married and obtained an apartment. Although G.S. lived with mother and father, grandmother continued to care for her. Mother and father separated several times, and during these periods, G.S. would spend significant time at her grandparents' home. During one of the periods when mother and father were together, mother conceived and bore another child. Father believed he was the biological parent to the second child and raised the child as his own. However, Jason Stovall, with whom mother was having an extramarital affair, was the child's father.

During 2001, mother and father agreed that father should have custody of the children. The juvenile and domestic relations district court memorialized the agreement into a consent order placing custody of both children with father, with mother having visitation every other weekend. Father died accidentally on October 31, 2002. Subsequent to father's death, his parents, appellants David South and Zelma South, petitioned for custody of the children. The juvenile and domestic relations district court granted custody of G.S. to grandparents.[2] Mother was granted visitation with G.S. every other weekend, alternate holidays and thirty days in the summer.

Mother appealed the order granting custody of G.S. to the grandparents. The trial court heard the witnesses, including testimony by the CASA director and the child's guardian *ad litem*. Mother testified as an adverse witness.

---

[2] The court separately granted custody of the second child to Stovall, who proved his paternity. That order is not at issue in this appeal.

At the close of the grandparents' case, mother made a motion to strike the evidence, which the court granted. In its written order, the court stated:

> After hearing the evidence in this matter and considering the report of the Guardian *ad litem* and all of the evidence, and having given primary consideration to the best interest of the child and giving due regard to the primacy of the parent/child relationship, the Court finds that there has been no showing by clear and convincing evidence that the best interest of the child would be served by awarding custody to David and Zelma South. Further, the Court finds that after hearing the evidence, Jennifer South, the natural mother of [G.S.], is not an unfit person and that the best interest of the child would be served by awarding custody to Jennifer Rebecca South.
>
> The Court further finds that there have been presented no special facts and circumstances which would constitute an extraordinary reason for taking the child from the child's natural parent. It is therefore,
>
> ADJUDGED, ORDERED and DECREED that, after giving due primacy to the parent/child relationship, that the mother is not an unfit parent, and that there are no special facts and circumstances proved by clear and convincing evidence that there is any extraordinary reason for taking the child from its natural mother, it is
>
> ADJUDGED, ORDERED and DECREED that custody of the infant child, [G.S.], shall be with the natural mother, Jennifer Rebecca South.

After a later hearing, the court entered an order granting the grandparents visitation with G.S.

## II. Analysis

The grandparents argue that the court should not have granted the motion to strike because the court did not view the evidence and its reasonable inferences in the light most favorable to them, that the court improperly weighed the evidence, and that they had made a *prima facie* case that custody of G.S. should be placed with them.

When ruling on a motion to strike, "the trial court should resolve any reasonable doubt as to the sufficiency of the evidence in plaintiff's favor and should grant the motion only when 'it is

conclusively apparent that plaintiff has proven no cause of action against defendant.'" Perdieu v.

Blackstone Family Practice Center, Inc., 264 Va. 408, 418, 568 S.E.2d 703, 709 (2002) (internal

quotation marks and citations omitted); see also Kimberlin v. PM Transport, Inc., 264 Va. 261,

266, 563 S.E.2d 665, 668 (2002) ("[a] trial court must view the evidence and all reasonable

inferences drawn therefrom in the light most favorable to the plaintiff and overrule the motion

[to strike] when there is any doubt about the question" (citing Artrip v. E.E. Berry Equipment

Co., 240 Va. 354, 357, 397 S.E.2d 821, 823 (1990))).  In the case at bar, the court stated:

> The Court has reviewed and considered the authority and finds the
> posture of the case that this [sic] that the burden of proof is on the
> non-parent to show by clear and convincing evidence that the
> parent is unfit.  And that burden is not by the preponderance of the
> evidence, and it is not beyond a reasonable doubt.  It is a standard
> that lies somewhere in between.  And there is case law clear on the
> point and that is that that level of clear and convincing evidence
> and this Court believes it has an understanding of it.  Case law
> suggests that the facts and circumstances have to be special, use
> the word special fact and extraordinary reason for taking a child
> from its parent.  And that that will and can be rebutted, but only
> again by the clear and convincing evidence.  And that is the
> presumption that favors the parent, presumption that favors a
> parent over a non-parent.
>
>     *     *     *     *     *     *     *
>
> Simply put the Court is of the opinion that the petitioners as
> non-parents have not carried the requisite burden by clear and
> convincing evidence that the mother is unfit.  Accordingly the
> motion to strike is granted.

In this case, the trial court did not view the evidence and any reasonable inferences in the light

most favorable to the plaintiffs, as it was required to do at the motion-to-strike stage of the

proceedings.

Under the procedural posture of this case, to survive a motion to strike, a plaintiff is

required only to produce sufficient evidence to render reasonable a conclusion to support his

allegation.  See Washburn v. Klara, 263 Va. 586, 590, 561 S.E.2d 682, 685 (2002) (citations

omitted).  See also Izadpanah v. Boeing Joint Venture, 243 Va. 81, 82-83, 412 S.E.2d 708, 709 (1992); Higgins v. Bowdoin, 238 Va. 134, 141, 380 S.E.2d 904, 908 (1989); Leath v. Richmond F. & P. R. Co., 162 Va. 705, 710, 174 S.E. 678, 680 (1934).  "[T]he trial court is not to judge the weight and credibility of the evidence, and may not reject any inference from the evidence favorable to the plaintiff unless it would defy logic and common sense."  Claycomb v. Didawick, 256 Va. 332, 335, 505 S.E.2d 202, 204 (1998) (citing Austin v. Shoney's Inc., 254 Va. 134, 138, 486 S.E.2d 285, 287 (1997)).  "'In ruling on a motion to strike, *trial courts should not undertake to determine the truth or falsity of testimony or to measure its weight*.'"  Higgins, 238 Va. at 141, 380 S.E.2d at 908 (quoting Williams v. Vaughn, 214 Va. 307, 310, 199 S.E.2d 515, 517-18 (1973)) (emphasis in Higgins); see also Cohn v. Knowledge Connections, 266 Va. 362, 366, 585 S.E.2d 578, 581 (2003) (court cannot grant motions to strike or JNOV's "[i]f reasonable people may differ in their conclusions or if a conclusion is based on the weight to be given to the testimony" (citation omitted)).  Here, the court incorrectly weighed plaintiffs' evidence when ruling on the motion to strike.

However, even though the trial court erred in granting the motion to strike, we need not necessarily reverse the trial court's decision.  "When a trial court strikes a plaintiff's evidence, an appellate court, in reviewing the ruling, must view the evidence and all reasonable inferences to be drawn therefrom in the light most favorable to the plaintiff."  Economopoulos v. Kolaitis, 259 Va. 806, 814, 528 S.E.2d 714, 719 (2000) (citing West v. Critzer, 238 Va. 356, 357, 383 S.E.2d 726, 727 (1989)).  In this case, neither party correctly stated the applicable law on the legal issues either at the trial court or on appeal.

The grandparents assign error to the trial court's requirement that the mother be proven "unfit" and indicate there were "other special facts and circumstances [that] 'favored' custody in the non-parents as being in the best interest of the child."  Grandparents' counsel is wrong on

both counts: (1) the grandparents must prove there will be "actual harm" to the child if custody is placed with the mother; and (2) in meeting this burden, there is a *presumption* in "favor of the parent," not the grandparents. The United States Supreme Court has articulated that, "the interest of parents in the care, custody, and control of their children – is perhaps the oldest of the fundamental liberty interests recognized by this Court." Troxel v. Granville, 530 U.S. 57, 65 (2000); see also Williams v. Williams, 256 Va. 19, 21, 501 S.E.2d 417, 418 (1998) (citing Williams v. Williams, 24 Va. App. 778, 783, 485 S.E.2d 651, 654 (1997)). In a custody dispute between a parent and non-parents, the law presumes that the child's best interests will be served when in the custody of its parent. Brown v. Burch, 30 Va. App. 670, 685, 519 S.E.2d 403, 410 (1999) (citation omitted).

Although the parties understood that in a case between a parent and non-parents, the burden of showing the existence of circumstances that would deprive the parent of the right to custody is upon the non-parent, Judd v. Van Horn, 195 Va. 988, 996, 81 S.E.2d 432, 436 (1954), the correct legal test in custody cases between a parent and non-parents must at a minimum satisfy the standards established for visitation cases. As the Supreme Court has held in Williams, to satisfy constitutional requirements, a court must find "an actual harm to the child's health or welfare" before interfering with primacy of the parent's relationship with the child. 256 Va. at 22, 501 S.E.2d at 418. Thus, "[a] court reaches consideration of the 'best interests' standard . . . only after it finds harm" will occur to the child if interference with the parental relationship is not ordered. Id. See also Griffin v. Griffin, 41 Va. App. 77, 82-83, 581 S.E.2d 899, 901-02 (2003). Therefore, in order to survive the motion to strike, the grandparents' evidence had to establish a *prima facie* case that the child might suffer harm if custody was placed with the mother. If the trial court could not find evidence to support the grandparents' assertions using the "unfit

mother" and "best interests" tests, it is difficult to conclude how the grandparents' evidence could meet the more stringent legal standards that should have been applied.

Considering the evidence and all reasonable inferences in the light most favorable to the grandparents, they presented no evidence to show actual harm to the child if placed in the custody of mother.[3] In ruling on the motion to strike, the court said:

> And as the evidence reveals, this child is doing well. The evidence also reveals contrary to perhaps the opinion of [grandparents' counsel], but the evidence before the Court is that the mother has been a significant part of this child's life. She has not been absent for any appreciable period of time. She and the father were together, separated occasionally, that she has been a regular and routine part of the child's life by visitation and by custody. The grandparents have as well.
>
> The mother was called as an adverse witness. . . . Has she made bad decisions? She has. Does she continue to make them? She says not. Does the Court have some personal pleasure in what may have been her lifestyle? No. But do the facts and circumstances give rise to such an extraordinary level that she should surrender custody or lose custody of her child.

Here, the evidence showed that the child was doing well, that mother was involved in the child's life, and that there were no allegations of harm to the child if custody was placed with mother.

In view of the complete absence of evidence in grandparents' case of any actual harm to the child if placed in mother's custody, we cannot say that they made a *prima facie* case to deprive mother of her right to custody. "[E]rror which does not injuriously affect the interest of the party complaining is not reversible." Jenkins v. Winchester Dep't of Social Servs., 12 Va. App. 1178, 1186, 409 S.E.2d 16, 21 (1991). "When it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial

---

[3] Although both the CASA director and the guardian *ad litem* recommended that custody of the child remain with the grandparents, nothing in either the CASA report or the guardian *ad litem's* report, both of which were considered by the trial court, provided any evidence of actual harm to the child if custody was placed with mother.

justice has been reached, no judgment shall be arrested or reversed . . . for any error committed on the trial." Code § 8.01-678. In this case, though the grandparents lost on the procedural motion, it is clear from the record that all the interested parties were called in grandparents' case-in-chief, including the defendant who was cross-examined as an adverse witness, and that the CASA and guardian *ad litem* reports were considered. No additional evidence was proffered. Higgins, 238 Va. at 141, 380 S.E.2d at 908. The grandparents not only had the burden of proof but also had a presumption in favor of the mother to overcome. The grandparents did not cite to the trial court or this Court the correct legal standard to apply to the facts in this case, were not aware of the impact of Troxel, Williams or Griffin on the legal issues before the court, and presented no evidence that the child may be harmed by placing custody with the mother. As a matter of law, no rational fact finder could find there was evidence sufficient to preclude the parent from having custody in a contest between a parent and a non-parent under this legal test.[4]

### III. Conclusion

Even though the court did not view the evidence and all reasonable inferences in the light most favorable to the grandparents and instead weighed the evidence, the error is not reversible. Grandparents offered no evidence of actual harm to the child if placed in the custody of mother, as was their burden to show. Accordingly, we affirm.

Affirmed.

---

[4] See Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (*en banc*) (question is whether "[a]ny rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original)); see also Seaton v. Commonwealth, 42 Va. App. 739, 747-48, 595 S.E.2d 9, 13 (2004); Crowder v. Commonwealth, 41 Va. App. 658, 663, 588 S.E.2d 384, 387 (2003).