Present:  All the Justices

WILLIAM T. BUDD

                                        OPINION BY
v.  Record No. 061138        JUSTICE LAWRENCE L. KOONTZ, JR.
                                        April 20, 2007
VISEPONG PUNYANITYA, M.D.

            FROM THE CIRCUIT COURT OF ALBEMARLE COUNTY
                    Paul M. Peatross, Jr., Judge


    In this appeal of a judgment entered in a medical

malpractice case, we consider whether the trial court correctly

ruled that Code § 8.01-401.1 barred a party from introducing

certain statements contained in published medical literature

because copies of the statements had not been provided to the

opposing party thirty days prior to trial.  At issue is whether

a party may avoid this notice requirement of the statute by

having its own expert, upon direct examination, establish the

publications in which the statements appear as reliable

authorities in order to subsequently use the statements in

cross-examination of the opposing party's expert.

                            BACKGROUND

    Because this appeal is limited to a discrete issue of the

notice requirements of Code § 8.01-401.1, we need recite only

those facts necessary to our resolution of the appeal.  See,

e.g., Molchon v. Tyler, 262 Va. 175, 180, 546 S.E.2d 691, 695

(2001).

On December 27, 2004, William T. Budd filed an amended motion for judgment in the Circuit Court of Albemarle County against Visepong Punyanitya, M.D. alleging that Dr. Punyanitya had been negligent in providing medical care to Budd for recurring back and leg pain.[*]  Budd alleged in the amended motion for judgment that Dr. Punyanitya had performed multiple spinal surgeries on Budd between October 2000 and February 2002. Following these surgeries, Budd was diagnosed as having "severe compartment syndrome" and "chronic cellulitis in the left lower extremity" causing him constant pain and requiring him to walk with a cane.

Budd contended that prior to beginning treatment, Dr. Punyanitya failed to assess the risk of Budd developing compartment syndrome as a result of the surgeries and to timely diagnose that condition when it developed.  Budd sought damages of $1,600,000.

On January 10, 2006, approximately one month prior to trial, Budd filed in the trial court a "Plaintiff's Designation of Authoritative Literature" stating that "the following literature contain[s] statements that may be used in direct

---

[*]Martha Jefferson Hospital was also named as a defendant in the amended motion for judgment.  The hospital was subsequently dismissed from the case and is not a party to this appeal.

examination by plaintiff's experts as reliable authorities in medicine on compartment syndrome." Among the publications listed in the designation were Benjamin Gulli and David Templeman, "Compartment Syndrome of the Lower Extremity," 25 Orthopedic Traumatology: Complex Fractures and Associated Injuries 677, 677-84 (1994) (the Gulli/Templeman article) and Jeff Anglen and James Banovetz, "Compartment Syndrome in the Well Leg Resulting from Fracture-Table Positioning," 1994 Clinical Orthopaedics and Related Research 239, 239-42 (the Anglen/Banovetz article). A copy of the designation was mailed to Dr. Punyanitya's counsel.

Although the designation avers that "[t]he articles attached will contain statements demarked by underlining unless the entire article is designated," apparently no copies of the actual articles, demarked or otherwise, were attached to it. In any event, Budd concedes that he did not provide counsel for Dr. Punyanitya with copies of the designated articles or otherwise indicate the statements within those articles upon which he intended to rely at least thirty days prior to trial.

At trial, Budd called Dr. Daniel E. Gelb, an orthopedic surgeon, as an expert witness. During direct examination of Dr. Gelb, Budd's counsel stated that he had "one little administrative thing I want to do." Budd's counsel then asked

3

Dr. Gelb to confirm that counsel had previously requested Dr. Gelb "to look at some medical literature on [compartment syndrome]" and "form opinions whether they're reliable authorities."  Dr. Punyanitya's counsel interposed an objection, stating that "[t]hese documents were not presented to us 30 days before trial, as required by [Code § 8.01-401.1]."

Budd's counsel responded that he only wished to "lay[] a foundation for cross-examination" of Dr. Punyanitya's expert witnesses.  Budd's counsel contended that Code § 8.01-401.1 permits a party to establish that a medical publication regarding a particular medical issue is a reliable authority by the testimony of the party's expert witness without first providing the opposing party with copies of the publication thirty days prior to trial.  This notice requirement of the statute, Budd's counsel contended, applies only if the party's expert witness would be asked to read statements from the publication into the record on direct examination.  Counsel assured the court that Dr. Gelb would not be asked to read any statements from the publications in question.

The trial court sustained Dr. Punyanitya's objection and Budd was not permitted to have Dr. Gelb state an opinion as to whether any publication was a reliable authority regarding compartment syndrome.  At that time, Budd did not identify the

4

publications that he intended to have Dr. Gelb establish as reliable authority regarding compartment syndrome, nor did he proffer any statements in those publications to the trial court for inclusion in the record. During cross-examination of Dr. Punyanitya's expert witnesses, Budd did not seek to introduce any literature regarding compartment syndrome or otherwise attempt to question the experts on any statements in the literature he had previously identified in the designation of authoritative literature filed on January 10, 2006.

At the conclusion of all the evidence, the jury returned its verdict in favor of Dr. Punyanitya. Prior to the entry of a final order on the jury's verdict, Budd filed a motion requesting the trial court to reconsider its ruling barring him from having his expert witness, Dr. Gelb, establish the designated literature as reliable authority for use in cross-examining Dr. Punyanitya's expert witnesses.

For the first time before the trial court, Budd in the motion to reconsider expressly identified and proffered statements from the Gulli/Templeman article and Anglen/Banovetz article that he would have relied upon in his cross-examination of Dr. Punyanitya's expert witnesses. Budd contended that when he deposed those experts prior to trial, neither had indicated familiarity with "any article as a reliable source on the

5

subject of compartment syndrome." Accordingly, Budd asserted that where an opposing party's "experts would not agree that an authority is reliable, in order to establish its reliability and thus the basis for its admission into evidence, [a party] must lay that foundation through other means," namely by having the party's own expert do so upon direct examination. In such circumstances, Budd contended that the requirement of Code § 8.01-401.1 to provide the opposing party with copies of the statements contained in the publications thirty days before trial did not apply because the statements were not "intended to be used during **direct** examination." (Emphasis in original.)

Dr. Punyanitya filed a brief opposing Budd's motion for reconsideration, contending that Budd had attempted to introduce the statements contained in the publications through direct examination by having Dr. Gelb establish them as reliable authority. Thus, Dr. Punyanitya contended that the trial court correctly ruled that the thirty day notice requirement of Code § 8.01-401.1 was triggered even if Dr. Gelb was not going to read into the record, or otherwise rely on, any statements contained in the publications. Dr. Punyanitya further contended that Budd had waived any objection to the trial court's ruling because he failed to attempt to have the publications introduced through the testimony of Dr. Punyanitya's expert witnesses.

6

Following oral argument on the motion for reconsideration, the trial court entered separate orders dated March 14, 2006 denying the motion for reconsideration and confirming the jury's verdict in favor of Dr. Punyanitya. We awarded Budd an appeal on the following assignment of error:

> The trial court erred in refusing to allow Plaintiff's counsel to establish certain medical articles not previously provided as authoritative literature pursuant to Virginia Code Section 8.01-401.1 during direct examination of his own standard of care expert in order to lay the foundation for the use of statements from those articles during cross-examination of defense experts, when the articles were not required to be provided to opposing counsel thirty days prior to trial unless introduced during direct examination.

## DISCUSSION

The parties' arguments in this appeal with respect to the issue raised in Budd's assignment of error are, in all material respects, identical to the arguments presented in the trial court. However, before reaching the merits of those arguments, we will first briefly address two procedural issues raised by Dr. Punyanitya.

Dr. Punyanitya initially contends that Budd waived his right to challenge the trial court's ruling that Dr. Gelb would not be allowed to identify as reliable and authoritative any publications regarding compartment syndrome that had not been provided to Dr. Punyanitya's counsel thirty days prior to trial

7

because Budd did not make a contemporaneous proffer of those publications when the objection was sustained, but did so only in his motion for reconsideration. We disagree.

Dr. Punyanitya is correct that when a trial court rules that specific evidence will not be admitted because, for example, the evidence lacks relevance, the evidence ought to be proffered to the trial court at the time of the ruling, or as near in time thereafter as is practicable, so that the trial court can, if necessary, reconsider its ruling. See, e.g., Rose v. Jaques, 268 Va. 137, 154, 597 S.E.2d 64, 74 (2004); Whittaker v. Commonwealth, 217 Va. 966, 968-69, 234 S.E.3d 79, 81 (1977). However, in this case the trial court, based upon its interpretation of Code § 8.01-401.1, ruled as a matter of law that Budd would not be permitted to introduce through direct examination of Dr. Gelb any medical literature copies of which had not been provided to opposing counsel thirty days prior to trial. A contemporaneous proffer of specific literature would not have aided the trial court in reconsidering its ruling because the proffer would not have altered the underlying fact that copies of the literature had not been provided to Dr. Punyanitya's counsel thirty days prior to trial.

Next, Dr. Punyanitya reasserts his contention, made in the trial court, that Budd has waived his objection to the trial

8

court's ruling that Dr. Gelb would not be allowed to identify as reliable authority any medical publications that had not been provided to Dr. Punyanitya's counsel thirty days prior to trial because Budd failed to cross-examine either of Dr. Punyanitya's expert witnesses regarding those publications. This is so, Dr. Punyanitya maintains, because in the absence of any effort by Budd to have the defense experts acknowledge the publications as reliable authorities regarding compartment syndrome, this Court would be left to speculate whether Budd might not have had the publications introduced through their testimony. Again, we disagree.

The issue before this Court is not whether a specific medical publication could and should have been admitted into evidence. Rather, as we have already indicated, the sole issue is whether the trial court erred in ruling that Code § 8.01-401.1 requires a party to provide to an opposing party thirty days prior to trial copies of publications which the party will establish as reliable authority through direct examination of its own expert solely for the purpose of having those publications available for use in the subsequent cross-examination of the opposing party's expert witnesses. In the context of that issue, we are not required to speculate whether Dr. Punyanitya's experts would have acknowledged the medical

publications as reliable authorities so that Budd could use them in cross-examination of these experts.  Moreover, Budd's apparent election not to attempt to establish the publications as reliable authority by cross-examination of the defense experts does not establish a waiver of the issue whether Budd should have been permitted to establish the publications as reliable authority through the direct testimony of Dr. Gelb.

We now turn to the issue raised by Budd's sole assignment of error.  Because the trial court ruled as a matter of law that Code § 8.01-401.1 required Budd to provide Dr. Punyanitya with copies of the statements contained in the publications in question thirty days prior to trial, the issue before this Court is one of statutory interpretation.  Under well-established principles, an issue of statutory interpretation is a pure question of law which we review de novo.  Crawford v. Haddock, 270 Va. 524, 528, 621 S.E.2d 127, 129 (2005); Ainslie v. Inman, 265 Va. 347, 352, 577 S.E.2d 246, 248 (2003).  When the language of a statute is unambiguous, we are bound by the plain meaning of that language.  Campbell v. Harmon, 271 Va. 590, 597-98, 628 S.E.2d 308, 311-12 (2006); Virginia Polytechnic Inst. & State Univ. v. Interactive Return Serv., 271 Va. 304, 309, 626 S.E.2d 436, 438 (2006).  Furthermore, we must give effect to the legislature's intention as expressed by the language used in the

statute unless a literal interpretation of the language would result in a manifest absurdity.  Boynton v. Kilgore, 271 Va. 220, 227, 623 S.E.2d 922, 925-26 (2006); Williams v. Commonwealth, 265 Va. 268, 271, 576 S.E.2d 468, 470 (2003); Woods v. Mendez, 265 Va. 68, 74-75, 574 S.E.2d 263, 266 (2003).

Code § 8.01-401.1, which as a whole addresses the role of expert witnesses and provides an exception to the hearsay rule in civil cases generally, in relevant part provides:

> To the extent called to the attention of an expert witness upon cross-examination or relied upon by the expert witness in direct examination, statements contained in published treatises, periodicals or pamphlets on a subject of history, medicine or other science or art, established as a reliable authority by testimony or by stipulation shall not be excluded as hearsay.  If admitted, the statements may be read into evidence but may not be received as exhibits.  If the statements are to be introduced through an expert witness upon direct examination, copies of the statements shall be provided to opposing parties thirty days prior to trial unless otherwise ordered by the court.

(Emphasis added.)

We previously addressed the operation of this language, which was added to Code § 8.01-401.1 by amendment in 1994, in Weinberg v. Given, 252 Va. 221, 226, 476 S.E.2d 502, 504 (1996). In that case, we explained that the effect of the 1994 amendment was to "permit[] the hearsay content of such articles to be read into the record as substantive evidence, provided no other evidentiary rule prohibits such admission."  Cf. Todd v.

<u>Williams</u>, 242 Va. 178, 182-83, 409 S.E.2d 450, 452-53 (1991)(holding, prior to the amendment of Code § 8.01-401.1, that it was error to permit an expert witness to refer to authoritative literature during testimony). Subsequently, in <u>May v. Caruso</u>, 264 Va. 358, 362-63, 568 S.E.2d 690, 692 (2002), we held that the trial court did not abuse its discretion in refusing to permit a party to have its expert introduce statements from voluminous authoritative literature because, in providing copies of that literature to opposing counsel under the thirty day notice requirement of Code § 8.01-401.1, the party failed to identify for opposing counsel the specific statements that would be relied upon. We are now called on to consider further the specific circumstances that will trigger that notice requirement pursuant to the emphasized language of the statute indicated above.

The plain language of the statute makes clear that the thirty day notice requirement applies only to "statements [that] are to be introduced through an expert witness upon direct examination." Budd reads the additional language of the statute to permit an expert witness upon direct examination merely to "establish[] as a reliable authority" the published literature in question without introducing into evidence through that expert specific statements therein so that the statements can

12

later be "called to the attention of an expert witness upon cross-examination," at which time they would be "introduced" in evidence.  Budd contends that this is a proper reading of the statute because the 1994 amendment effectively overruled our prior holding in Hopkins v. Gromovsky, 198 Va. 389, 395, 94 S.E.2d 190, 194 (1956), that a litigant may cross-examine an expert witness in order to test the expert's knowledge and accuracy by reading excerpts from authoritative literature, but only if the expert agrees that the literature is reliable and authoritative.  See also Griffett v. Ryan, 247 Va. 465, 473, 443 S.E.2d 149, 154 (1994); Todd, 242 Va. at 182-83, 409 S.E.2d at 452-53.  The thrust of Budd's contention then is that the statute now permits a party through the cross-examination of an opposing party's expert witness to introduce as substantive evidence statements from medical literature which have been established previously as reliable authority through the direct testimony of a party's own expert witness without triggering the statute's thirty day notice requirement.  We disagree.

As we made clear in Weinberg, the effect of the 1994 amendment to Code § 8.01-401.1 was to create an exception to the hearsay rule in order to permit the introduction of authoritative literature as substantive evidence.  And, as amended, the statute unquestionably permits statements in

13

authoritative literature to be "called to the attention of an expert witness upon cross-examination."  However, as we said in Hopkins:

> "There is a distinction between the use of medical or other scientific books for the purpose of cross-examination merely and to test the knowledge and reading and accuracy of the witness who is on the stand and the use of such books by reading them directly or indirectly to the jury on cross-examination, not for the purpose of testing the learning, reading, or accuracy of the witness, but in order to get their contents and the opinions of their authors before the jury."

198 Va. at 395, 94 S.E.2d at 194 (quoting 32 C.J.S., Evidence, § 574, p. 429)

Thus, prior to the amendment of the statute, the rule from Hopkins permitted a party, without violating the hearsay rule, to cross-examine an opposing party's expert witness through the use of statements in authoritative literature.  Nothing in the language of Code § 8.01-401.1 remotely suggests that the legislature intended to overrule Hopkins and its progeny, and those cases remain effective law.  So long as the statements from authoritative literature are used solely for the purpose of testing an expert's knowledge, reading and accuracy in a field of expertise, and are not read directly or indirectly to the jury as substantive evidence regarding the contents of the literature or the opinions of its author, neither the hearsay

14

rule nor the exception thereto found in Code § 8.01-401.1 is implicated.

Budd concedes that he intended to have statements from the medical publications in question introduced as substantive evidence in support of his claims against Dr. Punyanitya. Having failed to supply opposing counsel with copies of the statements thirty days prior to trial, he also concedes that he could not introduce the publications through his own expert's testimony upon direct examination. Thus, anticipating that Dr. Punyanitya's experts would not, or could not, acknowledge that the publications containing the statements Budd intended to rely upon were reliable authorities, he sought to "lay a foundation" for their introduction by having his own expert do so as an "administrative" matter.

It is readily apparent from the express language of the statute that the purpose of the thirty day notice requirement contained in Code § 8.01-401.1 is to limit the hearsay exception the statute otherwise provides so as to safeguard the opposing party's right to meaningful cross-examination of the expert witness. May, 264 Va. at 362, 568 S.E.2d at 692. The concept of a meaningful cross-examination is not satisfied when a party is denied the prior opportunity to review and formulate a response to the published statements introduced into evidence as

15

reliable authority during the direct testimony of the opposing party's expert witness.

The crux of the issue presented in this case is then whether the language of the statute contemplates, as Budd maintains, a distinction between merely "laying a foundation" to establish published literature as reliable authority for the subsequent introduction of that literature as substantive evidence and the introduction of published literature in evidence during the direct examination of the proponent's expert witness. The language of the statute makes no such distinction. The fact that statements from the literature established as reliable authority upon the direct testimony of the proponent's expert witness will not be read into the record, if at all, until a subsequent cross-examination of an opposing expert witness does not alter the conclusion that in the context of the language of Code § 8.01-401.1 the statements upon which the proponent intends to rely have been "introduced through an expert witness upon direct examination."

Moreover, if we were to adopt Budd's construction of the statute, a party could successfully circumvent the statute's thirty day notice requirement, and the hearsay rule, by having its expert essentially vouch for the reliability and authority of any number of publications which his opponent has never seen

16

and has not had a fair opportunity to have his own expert review and prepare a response. Such a result would not provide the limited and balanced exception to the hearsay rule which the legislature clearly intended. To bifurcate the meaning of the statute's language so as to permit a party's expert witness to merely establish a publication as a reliable authority on direct examination without "introducing" it is inconsistent with the purpose of the statute and, indeed, with traditional notions of fair play in the adversarial process.

Accordingly, we hold that when a party intends to introduce into evidence statements from published literature during the cross-examination of an opposing expert, but wishes to avoid the possibility that the opposing expert will not acknowledge that literature as a reliable authority on a particular matter at issue by having the party's own expert establish the literature as a reliable authority on direct examination, the party must provide opposing counsel with copies of the statements in the literature thirty days before trial pursuant to Code § 8.01-401.1.

CONCLUSION

For these reasons, the judgment of the trial court in favor of Dr. Punyanitya will be affirmed.

Affirmed.

17